[S. F. No. 5424.   In Bank.—May 14, 1910.]

## WILLIAM W. BROWNELL et al., Petitioners, v. SU--PERIOR COURT OF YOLO COUNTY, Respondent.

ESTATE OF DECEASED PERSON—PARTIAL DISTRIBUTION—MOTION BY
CREDITOR TO SET ASIDE ORDER—MISTAKE—EXCUSABLE NEGLECT—
JURISDICTION—PROHIBITION.—Where the superior court has juris-
diction to entertain a motion by the creditor of the estate of a
deceased person, under section 473 of the Code of Civil Procedure,
to set aside an order of partial distribution of the estate on the·
ground that it was taken against him through his mistake and
excusable neglect, the writ of prohibition will not lie to prevent the·
superior court from hearing and determining the application upon
its merits.

ID.—CONSTRUCTION OF CODE—TIME OF ORDER "TAKEN."—Where the·
time for the hearing of the petition for the order of partial dis-
tribution was fixed for March 15, 1909, and the court then orally
announced its decision on that date, and a memorandum thereof was,
entered in the clerk's rough minutes, and nothing further was done·
until March 23, when an order antedated March 15 was signed
and filed and entered upon the minutes of the court, the decree of·
partial distribution was not "taken" as against the creditor until.
March 23, and when his application was presented to the court.
for relief under section 473· of the Code of Civil Procedure on
September 21, it was presented within "six months after such judg-
ment, order, or proceeding was taken," within the meaning of that.
section.

ID.—ENTRY UPON "ROUGH MINUTES" BY CLERK NOT OFFICIAL.—The·
entry of the oral decision of the court upon the "rough minutes" or·
"blotter" kept by the clerk was not upon any official record of the
court.   There is no law providing for "rough minutes."   They are
mere memoranda for the convenience of the clerk; and though they
are sometimes useful as evidence, where the proper foundation is,
laid, yet they have no inherent vitality or effect, and do not con--
stitute an official record of any character.

ID.—WORD "TAKEN" EQUIVALENT TO "RENDITION."—The word "taken" as used in section 473 of the Code of Civil Procedure is to be considered as used in the same sense as the words "render" or "rendition" when used with reference to a judgment; and though the word "taken" embraces judgments, orders, and proceedings, and was adopted as a term alike applicable to either or all of them, it has relatively the same meaning as "rendition."

ID.—MEANING OF "RENDITION."—Where findings are required there is no "rendition" of the judgment until they are filed with the clerk and if none are required, there is no "rendition" thereof until the decision is entered in the official minutes of the court.

ID.—ORAL ORDER IN BREAST OF COURT UNTIL LEGALLY ENTERED OR FILED WITH CLERK.—The oral order was in the breast of the court and subject to change, until entered on the official minutes, or until the official order was signed and filed with the clerk.

ID.—EFFECT OF ORAL ANNOUNCEMENT OF ORDER AS TO DISTRIBUTEES IMMATERIAL—RIGHTS OF ABSENT CREDITORS.—Whatever effect the oral announcement of the court's decision may have had to bind the distributees present in court, it could have no effect as against an absent creditor until entered in the official minutes, or filed with the clerk.

ID.—CONSTRUCTION OF SECTION 473 AS TO NOTICE—PREVIOUS NOTICE OF MOTION NOT REQUIRED.—Although section 473 of the Code of Civil Procedure provides, in effect, that the relief therein specified may not be given until after notice to the adverse party, it does not provide that no application for the relief can be made to the court until after such notice is given. Otherwise the six months' period would be reduced by five days. It is the application which is to be made within the six months. A motion is an application for an order.

ID.—MOTION PRESENTED IN TIME—SUBSEQUENT NOTICE.—Where within six months after the order was taken, the creditor filed his affidavits in support of his motion for relief, and presented the same in open court and moved it to set aside the decree of partial distribution, he thus sufficiently complied with the law to protect his rights; notwithstanding the court fixed a future time for the hearing of the motion, and made an order that parties adversely interested shall appear and show cause why the motion should not be granted.

ID.—COMPLIANCE WITH LETTER AND SPIRIT OF LAW.—The letter as well as the spirit of the law is fulfilled where the party appears and moves the court for relief within the proper period, and thereupon the court makes an order on the adverse parties to show cause on a day fixed why the motion should not be granted, and they are duly notified thereof.

PETITION for Writ of Prohibition to the Superior Court of Yolo County. N. A. Hawkins, Judge.

The facts are stated in the opinion of the court.

Hurst & Hurst, and Alexander R. Baldwin, for Petitioners.

Arthur C. Huston, and Harry L. Huston, for Respondent.

SHAW, J.—This is an original proceeding in prohibition to prevent the superior court from hearing an application by one Mabry McMahan, who alleges that he is a creditor of the estate, to set aside an order of partial distribution of the estate of Harriet V. Brownell, deceased, on the ground that it was taken against him through his mistake and excusable neglect.

It is claimed that the application of McMahan was made after the expiration of the period of six months prescribed as a limitation thereto by section 473 of the Code of Civil Procedure.

1. The petition for partial distribution of the estate was made by Edward Earle Brownell and W. W. Brownell as devisees of the property. It was filed on March 4, 1909, and the hearing thereof was fixed for March 15, 1909. The ten days' notice by posting, required by the law, was duly given and the matter came on regularly for hearing on the day fixed. No person appeared in opposition thereto, and after the usual *ex parte* proofs the court orally announced that the petition was granted and the clerk made a memorandum to that effect. No order was prepared or signed at that time, and nothing further appears to have been done until March 23, 1909, when a paper purporting to be the order for partial distribution was filed in the cause. It was signed by the judge and it purported to be an order made on March 15, 1909, closing in the usual form, thus: "Done in open court and dated this fifteenth day of March, A. D. 1909." The order was on the same day, March 23, entered in the minutes of the court. The memorandum of the clerk to the effect that the petition was granted, was made in a book which the plaintiffs designate as "the rough minutes of the court," and which in the answer filed herein is styled a "blotter." There is no law providing for "rough minutes." The clerk doubtless finds it necessary, as orders are announced by the court, to make a memorandum thereof for his own guidance in entering the orders on the register of actions and in the minutes. These memoranda are

CLVII Cal.—45

often referred to as "rough minutes," but they do not consti-
tute an official record of the court. They are sometimes useful
as evidence, if the proper foundation is laid, but they have no
inherent vitality or effect. We cannot regard this personal
memorandum as in any sense a record of the court, or as an
official record of any character.

The application to vacate the order was not made, nor was
any proceedings to that end begun, until September 21, 1909.
If the six months' limitation began to run on March 15th, the
application to vacate it was clearly too late, and the court had
no authority to act upon it, except to dismiss it. Section 473
authorizes the court to relieve a party from a judgment, order,
or other proceeding taken against him: "provided that appli-
cation therefor be made within a reasonable time, but in no
case exceeding six months after such judgment, order, or pro-
ceeding was taken." The question is, When was the decree
of partial distribution "taken" within the meaning of this
provision?

A somewhat similar question has arisen in this and other
states, where a statute provides that an appeal may be taken
within a stated time "after the rendition of the judgment." In
this state the former Practice Act prescribed a period of one
year. In *Gray* v. *Palmer,* 28 Cal. 416, the judgment was pro-
nounced on April 6, 1861. It was drawn up, signed by the
judge, and filed on April 9, 1861, and was entered in the judg-
ment book on June 17, 1861. An appeal taken on June 14,
1862, was held to be too late, on the ground that "there was a
rendition of the judgment as early, at least, as the 9th of
April," 1861, when the judgment was formulated, signed, and
filed. In *Peck* v. *Courtis,* 31 Cal. 209, a final judgment in
partition on confirmation of the report of referees was ordered
on December 22, 1863, but it was not entered until July 25,
1864. An appeal was taken on July 8, 1865, less than one year
after the entry but more than a year after the judgment was
ordered. It was held that the order for judgment was equiva-
lent to a rendition thereof and that the appeal was barred.
*Genella* v. *Relyea,* 32 Cal. 159, was a case similar to *Gray* v.
*Palmer,* 28 Cal. 416, and it was decided the same way, the
court saying, however, that the time for taking an appeal be-
gan to run at the time judgment was ordered, citing *Peck* v.
*Courtis,* 31 Cal. 209. *Peck* v. *Courtis* was followed in *Wether-*

*bee* v. *Dunn,* 36 Cal. 252. In New York a writ of error could be taken within two years after the "rendering of the judgment." It was held in that state that the time began to run at the time the judgment was pronounced and not from the time of its entry and that a writ sued out more than two years after the judgment was thus rendered was barred. (*Fleet* v. *Youngs,* 11 Wend. 522; *Lee* v. *Tillotson,* 4 Hill. 27.) In Nevada, the same conclusion was reached, the court holding that an appeal could be taken after rendition and before entry. (*Cal. St. Co.* v. *Patterson,* 1 Nev. 155; *Kehoe* v. *Blethen,* 10 Nev. 453.) In *Estate of Newman,* 75 Cal. 213, [7 Am. St. Rep. 146, 16 Pac. 887], and *In re Cook,* 77 Cal. 225, [11 Am. St. Rep. 267, 17 Pac. 923, 19 Pac. 431], it was decided that a judgment is binding on the parties and privies as soon as it is rendered and before it is entered. In *Crim* v. *Kessing,* 89 Cal. 488, [23 Am. St. Rep. 491, 26 Pac. 1074], the following is laid down as the correct rule under the present code: "Under the provisions of the Code of Civil Procedure, whenever findings are required there can be no 'rendition of the judgment' until they are made and filed with the clerk. Findings of fact, however, are required only 'upon the trial of a question of fact,' and they may in all instances be waived. Wherever they are waived or are not required, the entry of its decision in the minutes of the court constitutes the 'rendition of the judgment' in the same manner as it did under the former system." (See, also, *San Joaquin etc. Co.* v. *West,* 99 Cal. 347, [33 Pac. 928]; *First Nat. Bank* v. *Dusy,* 110 Cal. 76, [42 Pac. 476], and *Painter* v. *Painter,* 113 Cal. 375, [45 Pac. 689], approving this rule.)

The word "taken," as used in section 473, is, as we think, used in the same sense as the words "render" or "rendition," when used with reference to a judgment. The word "rendered" is appropriately used in reference to a judgment or decree, but not to a proceeding or order. The phrase in question embraced judgments, orders, and proceedings, and the word "taken" was adopted as a term alike applicable to either or all of them, and having relatively the same meaning as "rendition."

But giving full force to the proposition that the order of partial distribution of the Estate of Brownell is to be considered as having been "taken" when entered on the minutes,

we cannot perceive how this can aid the plaintiffs here. The entry in the so-called "rough minutes" was, as we have seen, no official record of the order for judgment. The matter granted still remained a mere oral announcement. Where findings are filed, which constitute the rendition of a judgment, and where, of course, the conclusions of law signed by the judge show what judgment is to be entered, it has been repeatedly held that the court retains power to amend or change the conclusions of law so as to point to a different judgment and to enter a judgment different from that first announced, and that this power continues until the entry of the judgment. (*Condee* v. *Barton,* 62 Cal. 1; *Crim* v. *Kessing,* 89 Cal. 488, [23 Am. St. Rep. 491, 26 Pac. 1074]; *Broder* v. *Conklin,* 98 Cal. 363, [33 Pac. 211]; *Brady* v. *Burke,* 90 Cal. 5, [27 Pac. 52]; *First Nat. Bank* v. *Dusy,* 110 Cal. 76, [42 Pac. 476]; *O'Brien* v. *O'Brien,* 124 Cal. 426, [57 Pac. 225].) In the Brownell Estate there was no record of any decision or judgment given by the court, until the filing of the signed order on March 23d. The code provides that after the hearing of a petition for partial distribution, if the necessary facts are shown, the court must make an order requiring of the distributees a bond for the payment of their share of the debts, and directing that the distribution prayed for be made when such bond has been given and approved by the court. (Code Civ. Proc., sec. 1661.) The signed order recites that the bond required had been given and approved and it directed the distribution positively and without any condition precedent. The order must therefore have beeen prepared, approved, and signed by the judge at some time after the hearing and granting of the petition. Under the rule stated in *Crim.* v. *Kessing,* 89 Cal. 488, [23 Am. St. Rep. 491, 26 Pac. 1074], findings not being here required, the order would not be "taken" until it was in some manner entered in the minutes of the court, and here there was no such entry until the formal order or decree was entered at length in the minutes. We think that rule should perhaps be modified in cases like the one at bar so that the signing and filing of the formal order would constitute a "taking" thereof so far as an application for relief under section 473 is concerned. But as it was not signed and filed until March 23d, an application to vacate it would be in time if made within six months from that date.

Furthermore, the rule that the court may change its conclusions of law, after they are filed, and render a different judgment from that first announced would seem to be equally applicable here. No findings being required, and the court having merely made an oral statement of its decision, it might, before that decision was recorded, or signed and filed, change it in any respect and render a different decision. Whether or not it could by such change affect things done by the parties under the order as first announced, and before any change was made and announced, is a question not here involved. Nor are we concerned with the effect of an announcement of a decision or order against one who was then present. The party here seeking relief was not present and he had no actual notice or knowledge of the proceeding, nor any knowledge of the order until it was filed. As to such a party there should be some fixed manifestation of the order or proceeding before it can be considered as "taken" against him, so as to set the period of limitation in motion. We perceive in this no hardship upon the parties in whose favor the order, judgment, or proceeding is taken. They have it in their power to set the time running by procuring the appropriate entry to be made. Our conclusion is that the time began to run on March 23d and not before.

2. The plaintiff further contends that the application of McMahan for relief was not made on September 21st, nor until after the period of six months from March 23, 1909, had expired. This contention cannot be upheld. On September 21, 1909, while the court was in session, McMahan appeared and formally moved the court to set aside the order of partial distribution, stating at length the grounds of the motion and filing affidavits in support thereof. Thereupon the court made an order that the motion be heard on October 4, 1909, and requiring the persons to whom distribution was made, naming them, and all others interested, to appear at that time and show cause why the motion should not be granted. On the same day the distributees and the executor were served with a copy of the order and a notice that the motion would be pressed to a hearing on October 4, 1909. This was a sufficient application within the time limited. Section 473 provides, in effect, that the relief therein specified may not be given until after notice to the adverse party, but it does not provide that no application for the relief can be

made to the court until after such notice has been given. If it did require this, since five days' notice must be given, the effect would be to reduce the six months' period by five days. It is the *application* which is to be made within the six months. A motion is an application for an order. The letter as well as the spirit of the law is fulfilled where the party appears and moves the court for the relief within that period, and thereupon the court makes an order on the adverse parties to show cause on a day fixed why the motion should not be granted, and they are duly notified thereof. There is no decision of this court contrary to this. *Spencer* v. *Branham,* 109 Cal. 336, [41 Pac. 1095], was a proceeding in a justice court, and no application was made to the court within the time limited. A written statement of the motion to be made was handed to the justice while he was engaged in other occupations and was not doing judicial work nor in session as a court. In *Thomas* v. *Superior Court,* 6 Cal. App. 629, [92 Pac. 739], the only thing done within the six months was to serve a notice on the adverse party and file it in the clerk's office. This was not in any sense an application to the court. It was merely a notice that at a future time, beyond the six months allowed, such an application would be made. This was not sufficient. "The attention of the court *must* be called to it and the court moved to grant it." (*People* v. *Ah Sam,* 41 Cal. 650.) This was done by McMahan in the present case; the grounds were fully stated and the action of the court invoked, and we hold that to be a sufficient making of the application within the meaning of the code.

It follows that the court had jurisdiction to entertain and decide the application on its merits and that prohibition will not lie.

The writ is denied.

Angellotti, J., Sloss, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred

Rehearing denied.