[S. F. No. 16678. In Bank. June 30, 1942.]

THE STATE BOARD OF EQUALIZATION OF THE STATE OF CALIFORNIA et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Earl Warren, Attorney General, Robert W. Harrison, Chief Assistant Attorney General, and Bayard Rhone, Deputy Attorney General, for Petitioners.

Robert W. Kenny, Morris E. Cohn, Howland & Prindle, Clayton Howland and Everett V. Prindle for Respondent.

THE COURT—Petitioners seek to have annulled a judgment of contempt rendered for an alleged violation of a writ of mandate issued upon a judgment in a mandamus proceeding. Petitioners are the State Board of Equalization and the State Personnel Board, and the members of those boards, and the executive officer of the latter board, and the State Controller.

On March 29, 1940, respondent Superior Court of Los Angeles County rendered a judgment in a mandamus proceeding commanding petitioners to reinstate Robert A. Brown, Lewis Torrance, George McNamara, John T. Brady, Daniel H. Hudelson, William Magee, and Willard Long, Sr., to their positions as civil service employees of the State of California with the Board of Equalization, and to pay the salaries of those employees. The writ of mandate was issued on April 3, 1940. On February 17, 1941, the judgment was affirmed on appeal by the District Court of Appeal, Second District, Division Two; a hearing by this court was denied on April 17, 1941. (*Brown* v. *State Personnel Board,* 43 Cal. App. (2d) 70 [110 P. (2d) 497].) Pursuant to the terms of the judgment and on June 6, 1941, the salaries of all the employees which had accrued from the time of their dismissal to the entry of the judgments were paid to the employees, but none of the salaries accruing subsequent thereto were paid.

The writ of mandate directed the reinstatement of the employees Brown and Hudelson to their respective positions of supervising liquor control officers, grade 2, employees Torrance, Brady and Long to their respective positions of liquor control officers, and employees McNamara and Magee to their respective positions of investigators. It was ordered that the petitioners be paid their salary from the date of dismissal until reinstatement less certain deductions; and that the respondents therein, petitioners here, show to the superior court on April 17, 1940, that they have obeyed the writ.

Pursuant to the affidavit of employee Brady, an order to show cause why the petitioners should not be punished for

contempt for failure to obey the writ with respect to all of the employees except Long, was issued in the mandamus proceeding on July 19, 1941. It was made returnable August 4, 1941. Brady's affidavit charged that there had been no payment of any salary since the judgment was entered and that the employees had not been reinstated.

After a hearing on the order to show cause, and on October 9, 1941, the superior court made an order finding that petitioners had wilfully failed to comply with the writ of mandate, and that unless there was paid to the employees the sums named therein by October 30, 1941, and employee Brown offered the position of chief liquor control officer or district liquor control officer, the petitioners would be guilty of contempt and imprisoned until they had performed. It is a review of that order which is here involved.

This court's jurisdiction to entertain the present proceeding is challenged. On October 8, 1941, the day before the contempt order was made, petitioners petitioned the District Court of Appeal for a writ of prohibition to restrain the superior court from taking further proceedings in the contempt hearing. On the same day that court denied the petition without written opinion. Respondents assert that inasmuch as the same issues were raised by that petition the matter was still pending in the District Court of Appeal when, on October 24, 1941, application was made to this court for the writ of certiorari here involved; that the matter was pending in the District Court of Appeal until its order of denial of the petition became final thirty days after its rendition, and that in the interim this court had no jurisdiction; that when that order did become final it was res judicata on the issues now presented. That position is not tenable. The two proceedings were separate and distinct, the one for prohibition in the District Court of Appeal was before the contempt order here in question was made, and was an endeavor to restrain the superior court from further action, and was before the court at a time when it could not be assumed by the District Court of Appeal that the superior court would make an order in excess of its jurisdiction; rather, its assumption would be to the contrary; the present proceeding was initiated to review the contempt order *after* it was made and the superior court's action on the matter was known. The superior court undeniably had jurisdiction to hear the contempt proceeding, and, therefore, up to the time it made its

decision it could not have been said to be without jurisdiction and thus subject to restraint by prohibition. Certiorari, however, is appropriate to review an order in a contempt proceeding, the basic inquiry being whether the court acted in excess of its jurisdiction. Thus the same proceeding was not pending in the District Court of Appeal when application was made for the present writ, █ nor was the order of denial res judicata because the District Court of Appeal did not necessarily pass upon the issues here involved. The writ of prohibition may have been refused because the District Court of Appeal did not assume at that time that the superior court would make any order in excess of its jurisdiction. While it has been held that the ex parte denial by an appellate court without a written opinion of an application for a writ of prohibition is a final adjudication of the facts stated in the petition (*Reilly* v. *Police Court*, 194 Cal. 375 [228 Pac. 860]), from the foregoing discussion it is obvious that such rule is not applicable under the present circumstances. (See *O'Brien* v. *Olson*, 42 Cal. App. (2d) 449 [109 P. (2d) 8].)

With particular reference to the res judicata argument, it is pertinent to observe that the District Court of Appeal in denying the petition for the writ of prohibition may have done so on the ground that such was not the proper remedy, rather than that petitioners' claims were without merit. In so doing it would have been proceeding in accordance with the rule that "prohibition will not be granted in an appellate court to prevent the superior court from proceeding in a contempt matter merely upon the ground that the court has erred in the proceeding out of which the alleged contempt grew. The remedy of the petitioner in such a case is to first present his defense upon the hearing of the contempt proceeding, and then, if found guilty of contempt, to apply to a higher court for a writ of *certiorari* or *habeas corpus*. (*Wessels* v. *Superior Court*, 200 Cal. 403 [253 Pac. 135]; *Commercial Bank* v. *Superior Court*, 192 Cal. 395, 397 [220 Pac. 422]; *Drew* v. *Superior Court*, 43 Cal. App. 651, 655 [185 Pac. 680].)" (*Monjar* v. *Superior Court*, 12 Cal. (2d) 715, 717 [87 P. (2d) 694].)

█ Respondent as a further basis for its challenge of this court's jurisdiction herein, points out that after the contempt order of October 9, 1941, was made, but before the petition for review was filed in this court, petitioners applied to the District Court of Appeal for a writ of certiorari to review the

proceedings of the superior court in the contempt matter and respondent filed its answer thereto. That petition for certiorari in the District Court of Appeal was voluntarily withdrawn without prejudice by petitioners before the District Court of Appeal acted upon it and before the present proceeding was commenced, but respondent contends it was still pending therein when the present proceeding was commenced in this court because such dismissal would not become final until thirty days after its entry, and the petition was filed in this court before the expiration of that period. We cannot agree. The thirty days is the period after the decision of the District Court of Appeal is pronounced in which that decision becomes final. (Cal. Const., art. VI, sec. 4c.) In the instant case the proceeding for a review in the District Court of Appeal was voluntarily dismissed by petitioners before any judgment was pronounced by that court, therefore there was no judgment to become final thirty days after its pronouncement and no proceeding was pending therein awaiting decision. *Los Angeles Drug Co.* v. *Superior Court,* 8 Cal. (2d) 71 [63 P. (2d) 1124]; *Fitts* v. *Superior Court,* 6 Cal. (2d) 247 [57 P. (2d) 518]; and *Reilly* v. *Police Court, supra,* cited by respondent all concerned situations where a judgment had been pronounced by the District Court of Appeal.

 Respondent asserts that the issue has become moot. That contention is based upon the action of the State Board of Equalization in adopting a resolution on October 24, 1941, the day application was made to this court for the instant writ; the resolution declares an intention on the part of the Board of Equalization to comply with all of the terms of the writ of mandate. There are other parties, however, who were affected by the contempt order, namely, the State Controller and the Personnel Board and the members thereof. As to them the proceeding is not moot. The main issue presented is the payment of the salaries, a matter with which the State Controller is directly concerned.

The judgment in the mandamus proceeding, the violation of which must necessarily be the basis of the contempt order, directed the following: That employee Brown be reinstated as supervising liquor control officer, grade 2, and receive as salary from the date of his dismissal to the date of the judgment the sum of $205 per month, and at the same rate after the judgment until Brown shall have been reinstated, and after reinstatement Brown shall receive $205 per month until

the salary is changed or Brown is laid off or dismissed. With respect to the other employees, the judgment was substantially the same stating the salary and position to be as follows: Hudelson, supervising liquor .control officer, grade 2, with a salary of $225 per month; Torrance, Brady and Long as liquor control officers with a salary of $150 per month; McNamara and Magee as investigators with a salary of $150 per month. On June 6, 1941, all of the employees were paid the salaries specified in the judgment as having accrued at the date thereof. On July 26, 1941, and before the hearing on the contempt citation, employees Brady, Torrance, Magee and McNamara were ordered to report for duty on July 28, 1941; the first three reported for duty as ordered and have held their positions since that time. McNamara requested a leave of absence, he being employed privately. It was understood by him that the request would be denied unless he furnished a certificate showing his employment was necessary to national defense; he did not furnish such a certificate and has continued in private employment. Employee Hudelson was inducted into the United States Army on March 3, 1941, and has remained there since. Employee Long is not a party to the contempt proceeding, he having left his position, his salary having been paid in full. On July 3, 1941, the State Personnel Board attempted to reclassify the position of Brown from supervising liquor control officer, grade 2, to chief liquor control officer, also known as district liquor administrator. It is alleged in the petition and not denied that he was reinstated on September 22, 1941, as supervising liquor control officer and he has since held that position.

The contempt order of October 9, 1941, commanded the payment of salaries to the employees from the date of the judgment to the date of their reinstatement, or their separation from state employment by their acceptance of employment elsewhere as the facts with respect to each employee indicated; the amount was expressed only in a lump sum. The total amount ordered paid was in excess of an amount calculated at the rate specified in the judgment ordering the issuance of the writ of mandate. In addition, it was ordered that Brown be paid henceforth $300 per month. Since the judgment in the mandamus proceeding, the Personnel Board has changed the classification of chief liquor control officer to district liquor control administrator. In 1938 the Personnel

Board had adopted a resolution fixing the salary range of a chief liquor control officer at $300 to $380 per month.

On October 9, 1941, petitioners offered to pay to the employees the back salary less the sums they had earned in other pursuits, private or public, from the date of the mandamus judgment to the time of reinstatement. The chief controversy appears to be whether such earnings should have been deducted from the salary payable and thus whether petitioners were justified in refusing to pay more than the accrued salaries less that deduction. The answer to that issue hinges upon the proper interpretation of the mandamus judgment, and whether such deductions are proper.

■ Considering the latter question first, the rule is now well settled that a civil service employee is entitled to recover only the amount of salary which accrues during the period he is unlawfully prevented by the state from performing the duties of his position, after deducting from the total accrued amount any compensation he has received in private or public employment during such period. (*Wiles* v. *State Personnel Board,* 19 Cal. (2d) 344 [121 P. (2d) 673]; *Kelly* v. *State Personnel Board,* 31 Cal. App. (2d) 443 [88 P. (2d) 264].) Ordinarily the determination with reference to those deductions should be made by the court in the mandamus proceeding. (See *Wiles* v. *State Personnel Board, supra.*) ■ That brings us to a consideration of whether the matter was adjudicated in the mandamus proceeding in the instant case. Several factors might possibly indicate that the mandamus judgment settled that issue adversely to petitioners, and that therefore, petitioners were in contempt for insisting on making the deductions. The judgment made deductions of compensation received by the employees in other public service in fixing the amount of salary accrued up to the date of the judgment. The judgment declared that the records of the State Personnel Board should be corrected to show that the employees had a continuous civil service status and "to be entitled to receive the salary thereof;" that each receive the amount specified "per month for each and every month, and at the same rate for each fraction of a month, following date of rendition of judgment, until petitioner shall have been reinstated in his position . . . and thereafter and upon said reinstatement petitioner shall be entitled to receive the sum of (amount stated) per month as and for salary in the occupancy and performance of the duties of said position until

said salary shall have been changed or petitioner dismissed or laid off from said position as provided by law.'' In stating what the writ of mandate should contain, the judgment provided that warrants should be issued in the amount of the stated salary and ''for the further sum of (amount stated) for each and every month, and proportionately at that rate for each fraction of a month subsequent to date hereof, to and until said (employee) . . . shall have been reinstated in his position.'' It will be noted that the writ of mandate issued contains substantially the same language; in any event the judgment for the writ is controlling. It does not necessarily follow, that because the specified salary was ordered to be paid, no lawful deductions could be made. The judgment should be interpreted, if it may be without doing violence to the express language, so that it does not command that the public officers perform an unlawful act. It is the law, as heretofore stated, that deductions should be made for compensation received in other employment while the employees were unlawfully excluded from their positions. Therefore, to order officials to pay public funds in violation of that rule would be unlawful. Such expenditure of public funds would be illegal and contrary to law. In the light of those principles we believe the judgment properly interpreted means that there should be deducted from the salaries accruing between the date of the judgment and reinstatement, the compensation received from other employment. ▆ Therefore, the contempt order which commanded the payment of such accrued salaries without taking into consideration that factor was in excess of the jurisdiction of the court. In this connection respondent further urges, however, that the petitioners should have at least paid the amount less the deductions. Warrants were offered to the employees on October 9, 1941, the date of the contempt order, but prior to its entry, insofar as it was known what other compensation had been received, and it appears that negotiations were conducted between the employees and the state officials with relation to the amounts, if any, that had been received.

Respondent refers to the delay of the petitioners in reinstating the employees, that is, in waiting until July 28, 1941, after the order to show cause in the contempt citation was issued. But they were reinstated before a hearing in the contempt proceeding, and it was conceded by the employees at the hearing that there was no issue of contempt with regard

to the reinstatement. Furthermore, the contempt order stated that the petitioners should be guilty of contempt unless they made the payments set forth therein on or before October 30, 1941; there was no adjudication that they would be guilty of contempt if they failed to reinstate the employees. That had already been done.

Particularly with respect to employee Brown it appears that the mandamus judgment ordered that he be reinstated to the position of supervising liquor control officer, grade 2. He was reinstated in the position of supervising liquor control officer in September, 1941. It is alleged in petitioners' petition and not denied that the two above-mentioned positions are one and the same, and the salary range therefor is $200 to $260 per month. The contempt order, however, commanded the payment of $300 per month to Brown and apparently fixing Brown's classification as a supervising liquor control officer, grade 3, also known as chief liquor control officer and district liquor administrator, the salary range of which is $300 to $380 per month. Presumably that was done on the basis of a resolution of the State Personnel Board dated July 3, 1941, reclassifying Brown as a chief liquor control officer, and a resolution of the Board of Equalization to create such a position in the Los Angeles district. There is a conflict as to whether the money became available for that position or the allowance thereof was approved by the Director of Finance. On September 22, 1941, the Board of Equalization reinstated Brown to the position of supervising liquor control officer, formerly known as supervising liquor control officer, grade 2. The court exceeded its jurisdiction in its contempt order in so ordering the salary for the position of chief liquor control officer to be paid to Brown. The mandamus judgment ordered that he be reinstated to supervising liquor control officer, grade 2, that position is now known as supervising liquor control officer and carries a lower salary. The judgment in addition to directing reinstatement ordered that Brown be paid the named salary, that is, in the range for the last-mentioned position, until reinstatement "thereafter according to law." It also provides "and upon said reinstatement (Brown) shall be entitled to receive the sum of $205.00 per month as and for salary in the occupancy and performance of the duties of said position until said salary shall have been changed . . ." Under those circumstances it was not within the proper purview of the contempt order

to command him to be placed in the higher position even assuming their proper compliance with all the requisites to a reclassification or promotion to that position. The court was concerned in that proceeding with enforcing the judgment, and it cannot be said that by reason of that judgment the court may for all time in the future determine by contempt proceeding that the employee is receiving his proper classification and advancement. If Brown is entitled to a higher classification and greater salary and has been denied it, he has his remedy in appropriate proceedings. While it is proper as will hereafter appear to require an enforcement of the mandamus judgment that the reinstated employee receive the compensation of the position to which he was reinstated including any blanket increases in that compensation, there should not be included therein any promotions to a higher position. That is a separate and distinct matter that the mandamus judgment did not purport to embrace. Subsequent promotions are dependent on factors not litigated in the mandamus proceeding and are not automatic and therefore a contempt proceeding in execution of the judgment is not the proper method of determining those issues.

It appears that there was an entire salary range adjustment which consisted of a blanket increase of the minimum salary, and the contempt order took that increase into consideration in fixing the amount to be paid the employees for the period after the entry of the judgment in the mandamus proceeding. Petitioners do not question the propriety of such procedure, but insist that the periodical step ups or individual salary increases which would ordinarily occur during that period should not have been included in fixing the amount payable to the employees. It is apparent from the contempt order when the amounts there stated are compared with the period stated to be covered thereby, that those amounts are in excess of that amount which would be reached on a computation based upon either the rate fixed in the mandamus judgment or on a rate fixed by considering an increase by a general salary range adjustment. It is obvious therefore that the contempt order was in excess of the jurisdiction of the court in requiring the payment of accrued salary in excess of that specified in the mandamus judgment as interpreted to include the blanket increase by salary range adjustments. If the excess was due to the addition of the periodic individual salary increases, the order is equally vulnerable because those increases

are dependent upon the attainment of a certain percentage of efficiency by the individual employee. It is provided in the State Civil Service Act: "The board [Personnel Board] shall provide for intermediate [between blanket salary readjustments] steps within such limits to govern the extent of the salary adjustment which an employee may receive at any one time. After completion of the first year in a position, each employee shall receive a salary adjustment equivalent to one of such intermediate steps during each year when his service rating, as shown by the current or last performance report shall be equal to or higher than a reasonable percentage to be fixed by rule of the board." (Stats. 1937, p. 2085, sec. 70; Deering's Gen. Laws, 1937, Act. 1404.) Manifestly, no rating of efficiency could be made prior to the reinstatement of the employees. Although they were lawfully entitled to perform the duties of their positions they were not performing them and therefore were not available for the observation necessary to ascertain their efficiency.

 Respondent asserts that the proceeding here is premature because the order of contempt is not final. There is no doubt that the order of October 9, 1941, was a final order in a contempt proceeding, as is contemplated by section 1222 of the Code of Civil Procedure. The order adjudges "that unless within twenty days from the date hereof, that is to say, on or before the 30th of October, 1941, the respondents hereinafter named do and perform the acts hereinafter specified, the said respondents so failing in the said respective performances shall be guilty of contempt in disobeying and in failing to obey the lawful orders of this Court as aforesaid, they and each of them having the power to obey the said orders:" Thereafter follow the salary payments to be made and heretofore mentioned. Then it is ordered that:

"Upon the failure of the said respondents or any of them within the time aforesaid to perform and do the acts hereinabove specified, said respondent or respondents so failing shall be, as of the 30th day of October, 1941, guilty of contempt; and the said respondents and each of them so failing and so adjudged in contempt shall be imprisoned in the County Jail of the County of Los Angeles until such respondents so guilty of contempt shall have complied with the orders aforesaid, and to that end a warrant of commitment shall on the 30th day of October, 1941, issue against the said respondents so adjudged guilty of contempt." It is clear the order was a

final order in a contempt proceeding such as is reviewable by writ of certiorari.

For the foregoing reasons the order of October 9, 1941, herein is annulled.

Traynor, J., did not participate herein.