[Civ. No. 4443.   Fourth Dist.   Dec. 3, 1952.]

Estate of ORELIA B. HAMAKER, Deceased. A. L. ABRA-HAMS, Individually and as Executor, Appellant, v. REX HAMAKER et al., Respondents.

Paul Barksdale d'Orr and Powell & Banyard for Appellant.

George W. Trammell and Kenneth A. Davis for Respondents.

BARNARD, P. J.—This is an appeal from an order vacating a prior order approving a final account and decreeing distribution, and from an order requiring the executor to account for certain assets.

The appellant Abrahams and Frank H. Love are attorneys sharing an office in Los Angeles, and frequently associated in legal matters. Over a period of many years they had

represented Mr. and Mrs. Hamaker, who lived at Santa Ana. In 1936, Love represented Mr. Hamaker in bankruptcy proceedings, later Mrs. Hamaker went through similar proceedings, and Abrahams advised both of them in connection therewith. Abrahams did not appear as a creditor in either proceeding, but Mr. Hamaker's petition listed a money demand for $3,250 against Abrahams. In 1943, a creditor sought to reopen these bankruptcy proceedings on the ground that certain assets had been concealed. The lower court decided adversely to the Hamakers and Abrahams secured a reversal of that decision on appeal. Shortly thereafter, the Hamakers deeded certain land to Love which Love sold for between $7,000 and $8,000. Abrahams testified that this deed was given to Love as a payment on his fee, and that the Hamakers had previously offered to deed the land to him. Abrahams continued to render some service to the Hamakers, but made no charges and received no compensation.

Mrs. Hamaker became seriously ill in 1947, it being recognized in September that she had an incurable cancer. She saw her doctor every two or three days after Christmas, 1947, her condition kept declining, and after January 19, 1948, she was given opiates frequently and as much as twice daily. Mr. Hamaker died early in December, 1947. Mrs. Hamaker was appointed executrix of his will but resigned a couple of weeks later due to her health, and Abrahams was appointed administrator with the will annexed and Love acted as his attorney.

On December 11, 1947, Mrs. Hamaker came to their office and after talking with Love handed Abrahams certificates she owned for 500 shares of stock in the Standard Oil Company of California. Mr. Abrahams gave her a signed receipt stating that this stock was left with him for sale and that he agreed to pay to Mrs. Hamaker "when received, the proceeds from such sale." On January 10, 1948, Mrs. Hamaker executed a will in which she bequeathed $15,000 in cash to Abrahams "in lieu of any claim for attorney's fees, Mr. Abrahams may have, for services rendered to my husband and me over the past years." On the same day, January 10, Love went to Mrs. Hamaker's home in Santa Ana and secured her signature to a paper which he wrote out in longhand. This paper merely stated that Mrs. Hamaker thereby assigned to Abrahams these shares of Standard Oil stock, with full authority to transfer or sell any or all of them. The paper said nothing about what was to be done with the

proceeds. On February 2, 1948 Love again went to Mrs. Hamaker's home and secured her signature to another paper which he wrote out in longhand. This paper stated that on January 10th, she had assigned these shares of stock to Abrahams; that in accordance with an oral agreement she had made with Abrahams and Love she authorized Abrahams to do anything he wished in his "uncontrolled discretion" to reduce the stock to cash; that when this was done Abrahams and Love should retain one-half of the proceeds "as your fee in the matter you handled for Mr. Hamaker and me and in this matter"; and that Abrahams was to pay the other half of the proceeds to Rex Hamaker and Leonard Hamaker, the respondents here.

On February 21, 1948, Mrs. Hamaker executed a new will and the will of January 10th was destroyed. Except for a slight change which is not material here, the new will was identical with the will of January 10th and contained the same bequest of $15,000 to Abrahams, in lieu of any claim for attorney's fees over the years. Mrs. Hamaker died on March 4, 1948. Mr. Abrahams was appointed executor of her will, and Love acted as his attorney. On June 3, 1949, the court entered an order approving the final account and decreeing distribution.

On December 2, 1949, these respondents, who were the residuary legatees under Mrs. Hamaker's will, filed an application under section 473 of the Code of Civil Procedure for an order vacating the order and decree which had been entered on June 3, 1949, and permitting the applicants to file exceptions to the account and petition for distribution, together with an affidavit of merits and the proposed exceptions. This application alleged, among other things, that Abrahams had acted as attorney for both Mr. and Mrs. Hamaker for many years; that at the time of Mrs. Hamaker's death he was acting as her attorney and as administrator of her husband's estate; that Mrs. Hamaker was the owner of this Standard Oil stock, and these shares were a part of her estate; that in his final account Abrahams had failed to account for the proceeds of this stock; that Abrahams had told these applicants that it was not necessary for them to be present or to be represented; that at all times mentioned here one of these applicants was and has been a resident of Texas; that they had no knowledge of the inventory or final account until after that account was approved; that thereafter Abrahams forwarded to them checks purporting

to represent their shares of the estate, which did not check out with the assets of the estate as they knew them to be; that they requested further information from Abrahams; that after they received a copy of the inventory and the final account they arranged to have auditors check the records of the estate; that the auditors were delayed by the absence of the bookkeeper for Abrahams; that the audit disclosed that this stock had been sold and only one-half of the proceeds had been accounted for in the estate; that on receiving this audit they entered into negotiations with Abrahams in an effort to have this matter corrected; that on the refusal of Abrahams to make any correction or account for these proceeds they retained attorneys to investigate and to advise them as to their legal rights; and that this investigation was diligently carried on but it was not until December 1, 1949, that their attorneys were able to complete their investigation and advise the applicants as to their rights. The exceptions to the final account raised the issue as to whether Abrahams had accounted to the estate for the proceeds from this stock. It appears that Abrahams had had this stock transferred to his name on January 30, 1948, and that on March 1, 1948, he sold the stock for $28,810.41, that he turned into the estate $14,617.72, and that he retained $14,192.69, giving half of that amount to Love.

On December 2, 1949, the judge signed ''in open court'' an order for hearing of the ''application under Section 473 C.C.P.'' This order recited that the application for an order vacating these previous orders and permitting the applicants to file exceptions to those matters ''having been presented to this court, and the court having read the same, and good cause appearing therefor,'' it was thereby ordered that the hearing on said petition was set for December 23, 1949, and that 10 days' notice of said hearing be given. On the same day, December 2d, a minute order was entered reciting that the application under 473 ''being specifically brought to the attention of the court, and upon showing made'' the court had fixed December 23, 1949, for a hearing thereon. This hearing was continued to April 25, 1950, at which time the court entered an order granting the petition, vacating and setting aside the previous order in question, and permitting the applicants to file the exceptions to the final account and petition for distribution. This order further provided that by stipulation the exceptions filed with the application should

be deemed to be filed as and for the exceptions to the final account, report of executor and petition for distribution.

A hearing on the exceptions was later had and on June 8, 1951, the court filed its findings of fact. Briefly stated, it was therein found that the deceased owned these shares of Standard Oil stock; that on December 11, 1947, she delivered this stock to Abrahams with instructions to sell the stock and pay the proceeds to her; that Abrahams sold the stock on or about March 1, 1948, for $28,810.41, but did not pay to her or account to her for any part thereof; that he accounted to her estate for $14,617.72 from said proceeds but has wrongfully failed and refused to account for the remainder; that Abrahams personally, and through his associate Love, caused the decedent to sign the documents relating to this stock on January 10 and February 2, 1948, for which there was no consideration; that Abrahams and Love were then acting as legal counsel for Mrs. Hamaker, and also as administrator and attorney for her husband's estate; that at all times after December 6, 1947, Mrs. Hamaker was suffering from cancer in its terminal stages, was in great pain, and her mental capacity was seriously impaired; that from January 1, 1948, to her death she was almost constantly under the influence of strong narcotics; that Abrahams and Love induced her to sign the instruments of January 10th and February 2d by falsely representing to her that she and her predeceased husband were indebted to them in a substantial amount; that these documents were secured from the deceased by the undue influence of Abrahams and Love; that from the proceeds of the sale of the stock Abrahams had wrongfully paid $7,096.35 to Love; that Love was not, and is not, entitled to said sum or any part thereof; that Abrahams was at all times fully cognizant of all the facts referred to, but has failed as executor to take any steps to collect this sum from Love; and that said amount has at all times been collectible from Love. As conclusions of law it was found that the previous account should be disallowed; that Abrahams is indebted to the estate in the sum of $14,-192.69 with interest from March 1, 1948; that he should be surcharged with that amount; and that he should forthwith file an amended account in which he surcharges himself with this sum with interest. An order and decree was entered accordingly, and Abrahams has appealed from that order and from the order vacating the prior order settling the final account.

The appellant first contends that the court was without jurisdiction to entertain the application of the respondents to set aside the previous order, and for permission to file exceptions to the account. It is first argued that this application was not one for relief from disability arising out of surprise or excusable neglect under section 473; that it failed to show "probative facts" showing surprise or excusable neglect; that there was no allegation of a failure to receive all notices required by law; that the parties knew the situation, as shown by their statement that when they received the decree of distribution they found that it did not check with the assets of the estate "as they knew them to be"; that the application was addressed to the idea that the executor should be held to account for certain property and not to the object of securing relief from disability; that the application did not directly pray for relief from any excusable fault; and that there was no sufficient showing of diligence on the part of the applicants. These contentions require no extended discussion. The application filed was headed as an application under section 473, and alleged facts sufficient for that purpose. ■ The court had a wide discretion in the matter and the burden is on the appellant to show an abuse of such discretion. (*Coyne* v. *Krempels,* 36 Cal.2d 257 [223 P.2d 244].) ■ An order granting such relief is favored where the circumstances indicate that justice has been served. (*Karlein* v. *Karlein,* 103 Cal.App.2d 496 [229 P.2d 831].)

It is also argued in this connection that this application was filed on the last day of the six months' period, and that the court was without jurisdiction to entertain it because the court was not "orally moved" to grant such relief within six months from the date of the judgment. It is argued that while the order fixing time for hearing recites that the application had been presented to the court and the court had read the same, it appears that the court got its information from reading the application and the affidavit of merits and not from any oral motion that relief be granted under section 473. The appellant relies on such cases as *Jones* v. *Superior Court,* 78 Cal.App. 163 [248 P. 292]; *Colthurst* v. *Harris,* 97 Cal.App. 430 [275 P. 868]; and *Brownell* v. *Superior Court,* 157 Cal. 703 [109 P. 91], in which it was held, in effect, that giving notice of an application is not the same as making an application, and that some oral request must be made within the six months' period. ■ While it has been held many times that the mere filing of a notice of intention to

make such a motion at a time subsequent to the expiration of the statutory period is not sufficient, it has also been held that it is sufficient if the action of the court is invoked in some appropriate manner before the prescribed period has expired. (*Estate of Grivel,* 208 Cal. 77 [280 P. 122].) In this case, an order was signed by the judge in open court disclosing that this application had been presented to the court; that the court had read it; that the court considered good cause had been shown; and that the court ordered a hearing on the matter. The minutes of the court also show that this application had been specifically brought to the attention of the court and that upon the showing made the court had fixed a date for the hearing. It clearly appears that the court acted within its jurisdiction in hearing and deciding this matter.

Appellant further contends that there is neither any evidence nor any presumption which would sustain the findings or judgment to the effect that he exercised any undue influence or took any advantage of Mrs. Hamaker; that the confidential relation of attorney and client, standing alone, is not enough; and that it appears without conflict that Mrs. Hamaker turned over the stock to him on December 11, 1947, and thereafter "ratified and renewed" that transaction in writing, as shown by the papers she executed on January 10 and February 2, 1948. It is argued that half of the stock was turned over to Abrahams in payment for past legal services; that he was not present when the documents of January 10th and February 2d were executed; that he carefully refrained from being present when the wills were executed; and that while a confidential relation appears there is nothing to show any "activity" on the part of Abrahams, or that he took any unfair advantage of Mrs. Hamaker, getting something he did not deserve, through falsely persuading her that she owed him money. It is further argued that because of her repeated confirmatory acts Mrs. Hamaker would have had, at the time of her death, no cause of action to set aside this payment of attorney's fees, and that it follows that the respondents can be in no better position.

The facts in this case should be a sufficient answer to these arguments. (*McDonald* v. *Hewlett,* 102 Cal.App.2d 680 [228 P.2d 83].) ■ A confidential relationship existed as between attorney and client; the appellant was administrator of the husband's estate and later acted as executor of the wife's estate; and he was working with Love throughout all the

proceedings here involved. There was a presumption of invalidity in connection with this transaction which, while rebuttable, could only be overcome by clear and satisfactory evidence that the transaction was fair and equitable, that Mrs. Hamaker was fully informed as to all matters involved, that she acted voluntarily and of her own free will, and that no advantage had been taken of the confidential relationship which existed. (*Roberts* v. *Wachter*, 104 Cal.App.2d 271 [231 P.2d 534].)

The appellant testified that he had acted as attorney for Mr. and Mrs. Hamaker over many years out of friendship, that he made no charges, and that he did not expect to be paid. He first testified that on December 11, 1947, Mrs. Hamaker left the Standard Oil stock with him for the purpose of selling it and paying the proceeds to her. He later testified that at that time she told him that she had discussed with Love the fees she and her husband owed him, and had told Love she was going to have Abrahams sell this stock and keep half of the proceeds to pay their fees. Abrahams knew of the wills which Love had prepared, leaving $15,000 to Abrahams in payment of all fees for past services. The wording of that provision of the will clearly shows matters which never would have originated in the mind of Mrs. Hamaker. The evidence shows, without conflict, that Mrs. Hamaker was in a very bad physical condition throughout this period; that she was under opiates a large part of the time, which affected her mental powers; and that in between opiates she could remember some things but was not in good mental condition, and at times could not recognize her doctor. When Mrs. Hamaker handed the stock to Abrahams on December 11th he gave her a receipt showing that he was to sell the stock and pay the proceeds to her. The paper which Love secured on January 10th confirmed the fact that the stock had been assigned, but made no mention of what was to be done with the proceeds. Another paper was secured on February 2d which, for the first time, said anything about Abrahams keeping part of the proceeds. Even that document directed Abrahams to pay the rest of the proceeds to these respondents, which was never done. The doctor testified that he was called on the morning of February 2d because Mrs. Hamaker had had such a bad night and was in a bad condition; that when he arrived at her home the nurse told him that her lawyer was with her; and that he returned later and gave her opiates to relieve her suffering.

The main contentions, with respect to the sufficiency of the evidence, are that Mrs. Hamaker turned the stock over to appellant on December 11th with the intention that he sell it and retain one-half of the proceeds, in payment for his past services; that no attack is made on that original transaction of December 11th; that she completely ratified and confirmed that transaction by the papers she signed on January 10th and February 2d; and that there is nothing to show that he exercised any undue influence, or to indicate that he did anything to gain any advantage over her.

The appellant testified that his services in the bankruptcy matters were worth $10,000, and he was unable to remember any specific services other than in that connection. Shortly after the bankruptcy matter was concluded, the Hamakers made a payment for legal services in that connection by turning over land worth some $8,000, the deed being taken in Love's name. Some years later the transaction here in question occurred. No attack is made on the ''original transaction of December 11, 1947,'' since the appellant then agreed in writing to take the stock for sale and to pay Mrs. Hamaker the proceeds when received. He never complied with that written agreement, and if the papers signed by Mrs Hamaker on January 10th and February 2d were a ratification of that agreement, they were confirming something different from what the appellant is now contending. The only reasonable inference from the evidence is that Abrahams and Love were working closely together throughout the entire matter here in question. After December 11th Mrs. Hamaker's physical and mental condition rapidly deteriorated. Love went to her home and got her to sign the paper on January 10th, which added nothing to the transaction of December 11th, other than to give apparent authority for him to transfer the stock into his own name. Abrahams had the stock transferred to his own name on January 30th, and on February 2d, a day she was in bad condition, Love went to her home and had her sign another paper, with quite a different effect. Even then, Abrahams waited until three days before she died before he sold the stock, and then failed to carry out her instructions. During this same period Mrs. Hamaker had executed a will, witnessed by Love, which gave Abrahams $15,000 ''in lieu of any claim for attorney fees'' he might have for services to her or to her deceased husband. It is unthinkable that Mrs. Hamaker intended to give Abrahams $15,000 in full payment for all past services, as provided in

the will, and at about the same time to give him practically the same amount for the same purpose from the sale of the stock, especially when about $8,000 had already and long before been paid for services in the bankruptcy proceedings, the only specific services relied on.

The evidence, with the inferences which may reasonably be drawn therefrom, fully supports the findings to the effect that Mrs. Hamaker's signature to these documents was obtained by the use of undue influence; that advantage had been taken of her physical and mental condition; that she would not have turned this part of the proceeds from the sale of the stock over to the appellant of her own free will; and that the appellant is indebted to the estate in that amount and should be required to account therefor.

■ The only other point raised is that the court was without power to determine that Love, who is not a party to the proceeding, had overreached Mrs. Hamaker, or to make a finding that he was indebted to the estate in the sum of $7,096.35, or "to saddle Abrahams, in the judgment with Love's supposed debt." While the court found, among other things, that Love had been paid $7,096.35 from the proceeds of the stock, that he was not entitled to that amount or any part thereof, that he is indebted to the estate in that amount, and that this amount was at all times collectible from him, these findings were appropriate for the purpose of showing that Abrahams, as executor, had not performed his duty and was chargeable with the full amount of the part of the proceeds which he had not accounted for. No judgment was entered against Love and these findings, with the other findings, were merely to the effect that Abrahams had failed to account for a certain amount, was indebted to the estate to that extent, and should be required to account therefor. This was true irrespective of whether or not he had turned over any of the money to Love. He was not "saddled" with Love's supposed debt, but was merely held to account for his own delinquency.

The orders appealed from are affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied December 19, 1952, and appellant's petition for a hearing by the Supreme Court was denied January 22, 1953. Carter, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.