[Crim. No. 5664.   In Bank.   Apr. 27, 1955.]

THE PEOPLE, Respondent, v. ALFRED BERGER, Appellant.

Morris M. Grupp for Appellant.

Charles R. Garry, Norman Leonard, George Olshausen and Leo R. Friedman as Amici Curiae on behalf of Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Elizabeth Miller and Arlo E. Smith, Deputy Attorneys General, Thomas C. Lynch, District Attorney (City and County of San Francisco), William B. Acton and Irving F. Reichert, Jr., Assistant District Attorneys, for Respondent.

Roger Arnebergh, City Attorney (Los Angeles), William II. Parker, Chief of Police, Bourke Jones, James A. Doherty and Alan G. Campbell, Assistant City Attorneys, Ralph Eubank, Deputy City Attorney, J. F. Coakley, District Attorney (Alameda), R. Robert Hunter, Chief Assistant District Attorney, Maury Engel, Bernard M. King and John C. Baldwin, Deputy District Attorneys, as Amici Curiae on behalf of Respondent.

TRAYNOR, J.—Defendant was indicted for conspiracy to commit grand and petty theft and conspiracy to solicit for charitable purposes without a permit. (Pen. Code, § 182; San Francisco Police Code, § 590.) He appeals from the judgment of conviction entered on a jury verdict finding him guilty on both counts and from the order denying his motions for new trial and in arrest of judgment.

Defendant employed several solicitors to obtain money for a publicity campaign for blood donations for wounded members of the armed services. Introducing themselves as representatives of patriotic and veterans organizations the solicitors telephoned thirty to fifty persons a day and asked for money to print newspaper advertisements, open a blood collection center, sponsor radio and television shows, buy blood, and provide cab fare for blood donors. In response to these calls, contributions totalling over $65,000 were made to defendant. He kept for his own use most of the money received.

On March 12, 1952, members of the San Francisco police department and the district attorney's office entered defendant's place of business, identified themselves and showed the office manager a search warrant. She asked them to wait for defendant, but the investigator from the district attorney's office replied, ''Well, while we are waiting here there is no use wasting the time, we will just start looking into things and getting them ready to take what we want.'' For five hours the investigator, the police and an assistant district attorney ransacked defendant's files, desks, and wastebaskets. The investigator testified: ''We were looking around for evi-

dence of the commission of the alleged crime . . . anything that showed the commission of the crime charged." They read letters, cards, and records, and, according to the investigator, seized "thousands; tens of thousands" of cards, letters, files, and other documents "that seemed relevant to the commission of the crime." Over defendant's protests, they loaded the seized papers on a van and took them to the district attorney's office.

Upon the return of the warrant to the municipal court that issued it (see Pen. Code, § 1537), the court entered an order that the district attorney could retain the seized property as evidence. Defendant contended that the warrant was void and made a motion to quash it. The motion was denied, and defendant then petitioned the superior court for a writ of mandamus directing the municipal court to return the seized property. In hearings on the motion the district attorney and defendant's counsel thoroughly argued the question of the validity of the warrant and the legality of the search and seizure pursuant to it. The warrant placed no restrictions on the area to be searched or the things to be seized and was strikingly similar to the general warrant authorizing unlimited searches and seizures that was condemned when the right of privacy first received legal protection. (See *Huckle* v. *Money,* 2 Wills K.B. 206, 207, 95 Eng.Rep. 768, 769 (1763) ; *Entick* v. *Carrington,* 19 Howell's State Trials 1029 (1765) ; Lasson, The History and Development of the Fourth Amendment to the United States Constitution, pp. 43-50.) The court held that the warrant was void and that the search and seizure pursuant to it were illegal and entered a judgment quashing the warrant and ordering defendant's property returned to him. No appeal was taken and the judgment became final. The district attorney returned the seized papers to defendant, but during the proceedings, and unknown to either the court or defendant, he had been making photostats of them. As soon as defendant learned of the photostats, he petitioned the superior court for a writ of mandamus directing their delivery to him. Although the record does not disclose the result of this proceeding, counsel agreed at oral argument that the court announced from the bench that it would deny the writ and asked that findings of fact and a formal judgment be prepared. Neither defendant nor the prosecution, however, prepared findings or a judgment, and no judgment was entered. At defendant's trial, the district attorney offered the photostats in evidence to show the nature and extent

of defendant's operations. Defendant's objections to their admission on the ground that they had been obtained by a flagrant abuse of the judicial process and in violation of his right to be secure against unreasonable searches and seizures were overruled.

Although findings of fact may not be necessary to support a denial of a petition for a writ of mandamus (see *Carpenter* v. *Pacific Mut. Life Ins. Co.*, 10 Cal.2d 307, 328 [74 P.2d 761]; *Brownell* v. *Superior Court*, 157 Cal. 703, 709 [109 P. 91]; *Matter of Danford*, 157 Cal. 425, 430 [108 P. 322]; *Adoption of Pitcher*, 103 Cal.App.2d 859, 864 [230 P.2d 449]), the entry of a judgment is necessary to make it a final decision effectual for any purpose. (*Berri* v. *Superior Court*, 43 Cal.2d 856, 860 [279 P.2d 8]; *Phillips* v. *Phillips*, 41 Cal.2d 869, 874 [264 P.2d 926]; *Southern Pac. Co.* v. *Willett*, 216 Cal. 387, 390 [14 P.2d 526]; *Brownell* v. *Superior Court*, 157 Cal. 703, 708 [109 P. 91]; *Crim* v. *Kessing*, 89 Cal. 478, 489 [26 P. 1074, 23 Am.St.Rep. 491]; see *State Board of Equalization* v. *Superior Court*, 20 Cal.2d 467, 475 [127 P.2d 4].) Thus, the second mandamus proceeding, not having been terminated by entry of a judgment, has no effect on the judgment in the first mandamus proceeding, and that judgment therefore stands as a binding determination that the warrant was void, that the search was illegal, and that defendant's papers were unlawfully seized. (See *Dillard* v. *McKnight*, 34 Cal.2d 209, 214 [209 P.2d 387, 11 A.L.R.2d 835]; *Krier* v. *Krier*, 28 Cal.2d 841, 843 [172 P.2d 681]; *Bernhard* v. *Bank of America*, 19 Cal.2d 807, 813 [122 P.2d 892]; *Steele* v. *United States, No. 2*, 267 U.S. 505, 507 [45 S.Ct. 417, 69 L.Ed. 761]; *State ex rel. Campo* v. *Osborn*, 126 Conn. 214, 218 [10 A.2d 687]; *State ex rel. Warren* v. *City of Miami*, 153 Fla. 644, 649 [15 So.2d 449]; *People ex rel. Barclay* v. *West Chicago Park Comrs.*, 308 Ill.App. 622, 629 [32 N.E.2d 323].)

Since the photostats are as much a product of the illegal search and seizure and are as tainted by it as the original papers themselves (*Silverthorne Lbr. Co.* v. *United States*, 251 U.S. 385, 392 [40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426]), the deception practiced by the prosecution in this case cannot circumvent the rule adopted in *People* v. *Cahan*, *ante*, p. 434 [282 P.2d 905].

The attorney general contends, however, that the objection made by defendant at the time the photostats were offered in evidence came too late. He argues that if illegally

seized evidence is to be excluded, the defendant should be required to present his objections in advance of trial by a motion to suppress. A preliminary motion of this kind was required by the United States Supreme Court when it announced the rule excluding illegally obtained evidence (*Weeks* v. *United States,* 232 U.S. 383, 396 [34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B 834]; see *Segurola* v. *United States,* 275 U.S. 106, 111-112 [48 S.Ct. 77, 72 L.Ed. 186]),* and it has been justified on the ground that it avoids the necessity of interrupting the trial to determine the collateral issue of the admissibility of the evidence. If the motion was denied, however, the trial court was required to consider de novo an objection to introduction of the evidence at the trial (*Gouled* v. *United States,* 255 U.S. 298, 312-313 [41 S.Ct. 261, 65 L.Ed. 647]; *Amos* v. *United States,* 255 U.S. 313, 316 [41 S.Ct. 266, 65 L.Ed. 654]), and since the defendant was thus afforded two opportunities to litigate the issue of whether the evidence was admissible, the objective of avoiding an unnecessary interruption of the trial was largely defeated. Moreover, appellate review of the decision on the motion might be sought by either the prosecution or the defendant (see *Essgee Co.* v. *United States,* 262 U.S. 151, 152 [43 S.Ct. 514, 67 L.Ed. 917]; *United States* v. *Kirschenblatt,* 16 F.2d 202 [51 A.L.R. 416]), even though defendant could raise the question again on appeal from the final judgment against him. In recent years, therefore, the federal courts have modified the requirements by allowing the trial court to entertain the motion for the first time at the trial (Fed. Rules Crim. Proc., rule 41(e); *Panzich* v. *United States,* 285 F. 871, 872; *United States* v. *Leiser,* 16 F.R.D. 199, 200; *United States* v. *Johnson,* 76 F.Supp. 538, 542; see *United States* v. *Asendio,* 171 F.2d 122, 125), and by affording appellate review in most cases† only on appeal from a final judgment of conviction. (*Cogen* v. *United States,* 278 U.S. 221, 224 [49 S.Ct. 118, 73 L.Ed. 275]; see *United States* v. *Jeffers,* 342 U.S. 48, 49 [72 S.Ct. 93, 96 L.Ed. 59]; *Lustig* v. *United States,* 338 U.S. 74, 75, 80

---

*For similar requirements in state courts, see *State* v. *Lock,* 302 Mo. 400, 429-432 [259 S.W. 116]; *Dalton* v. *State,* 230 Ind. 626, 632 [105 N.E.2d 509]; *People* v. *Grod,* 385 Ill. 584, 592 [53 N.E.2d 591]; *cf. Rickards* v. *State,* 6 Terry (Del.) 573, 585 [77 A.2d 199].

†For the instances in which the preliminary motion still is deemed a separate action and appealable as such, see *Cogen* v. *United States,* 278 U.S. 221, 225-226 [49 S.Ct. 118, 73 L.Ed 275]; *Matthews* v. *Correa,* 135 F.2d 534; *Cheng Wai* v. *United States,* 125 F.2d 915.

[69 S.Ct. 1372, 93 L.Ed. 1819] ; *McDonald* v. *United States,* 335 U.S. 451, 453 [69 S.Ct. 191, 93 L.Ed. 153] ; *United States* v. *Rabinowitz,* 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653] ; *Johnson* v. *United States,* 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436] ; *Rent* v. *United States,* 209 F.2d 893; *Janney* v. *United States,* 206 F.2d 601; Fraenkel, *Recent Developments in the Federal Law of Searches and Seizures,* 33 Iowa L.R. 472, 488-489; *cf. United States* v. *Edmonds,* 100 F.Supp. 862.)

Ordinarily preliminary questions of fact that govern the admissibility of evidence are determined by the trial court when objection is made to the introduction of the evidence at the trial, and the experience of the federal courts indicates that there are no compelling reasons why an exception to the general rule should be made in the case of illegally obtained evidence. (See *Youman* v. *Commonwealth,* 189 Ky. 152, 169-170 [224 S.W. 860] ; *Goodwin* v. *State,* 148 Tenn. 682, 687 [257 S.W. 79] ; see also 9 Wigmore on Evidence [3d ed.] § 2550; McCormick on Evidence §§ 52, 53.) The issues involved will ordinarily be no more time consuming or complicated than those presented to the trial court when it must rule, for example, on the admissibility of confessions, business records, or evidence claimed to be privileged, or on the qualifications of expert or other witnesses. On the other hand, a requirement that a preliminary motion be made to suppress the evidence would inevitably result in delaying the criminal trial while the motion was being noticed, calendared, heard, argued, and determined.

The judgment and order are reversed.

Gibson, C. J., Carter, J., and Schauer, J., concurred.

SPENCE, J.—I dissent.

The majority opinion rests entirely upon the exclusionary rule this day adopted by the majority in *People* v. *Cahan, ante,* p. 434 [282 P.2d 905].

The only material difference between the Cahan case and the present one is that in Cahan the illegality resulted from the absence of any warrant while in the present case a warrant was issued which was subsequently found to be technically defective. Here again the record contains abundant evidence to show the guilt of the defendant (see *People* v. *Berger,* (Cal.App.) 274 P.2d 514), and the trial court properly admitted all of the challenged evidence in accordance with the settled rule in this state prior to the decision in the Cahan case.

For the reasons stated in my dissent in *People* v. *Cahan, ante,* p. 434 [282 P.2d 905], I would affirm the judgment.

Shenk, J., and Edmonds, J., concurred.

Respondent's petition for a rehearing was denied May 25, 1955. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.