[No. C001215. Third Dist. Sept. 28, 1987.]

SIDNEY SWEPSTON, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent.

**COUNSEL**

Turner & Sullivan, Robert J. Sullivan and Elizabeth Ufkes Olivera for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Paul H. Dobson and Ramon de la Guardia, Deputy Attorneys General, for Defendant and Respondent.

OPINION

EVANS, J.—Plaintiff Sidney Swepston (Swepston) appeals from the trial court's denial of a writ of mandate by which he sought to compel the State Personnel Board (Board) to set aside its decision denying him overtime compensation for a period of time during which he was wrongfully discharged from state service and to order payment for overtime compensation for the period in question. Swepston contends that he is entitled to be compensated for the overtime he would have worked during the period of his involuntary discharge. He further contends the trial court erred when it determined as a matter of law he is not entitled to an award of overtime as a lost benefit. We do not agree and shall affirm the judgment. In light of this conclusion we need not consider Swepston's further contention that we find that the Board had the burden of proof with respect to the amount of overtime compensation owed him.[1]

### FACTS AND PROCEDURAL HISTORY

Swepston was a permanent civil service employee of the Department of Corrections. In September 1984 Swepston was served with a notice of adverse action which notified him that as of September 8, 1984, he was dismissed from his position as correctional officer for alleged violations of Government Code section 19572.[2] Swepston appealed his dismissal to the State Personnel Board, and on November 5, 1985, received a favorable decision revoking the action.

Subsequent to the adoption of the decision revoking Swepston's dismissal, the parties were unable to agree on the payment of salary and benefits due Swepston for the period of his wrongful discharge. An administrative hearing was held to resolve these issues. At the beginning of the hearing, the parties entered into a stipulation concerning back salary and vacation pay. The issue at the hearing was thus limited to the payment of overtime compensation which Swepston claimed he would have earned for the period in question.

The administrative law judge denied Swepston's request for overtime compensation. That decision was adopted by the State Personnel Board, and this appeal ensued.

---

[1] Plaintiff asks that we take judicial notice of a State Personnel Board decision, "*In the Matter of the Appeal of Eugene Payne.*" The matter is denied.

[2] Government Code section 19572 sets forth causes for disciplining a civil service employee.

DISCUSSION

The State Civil Service Act[3] provides for compensation of employees who have been wrongfully discharged from state service. At the time Swepston's dismissal from state service was revoked and he was restored to his position, section 19584 provided in relevant part: "Whenever the board revokes or modifies an adverse action and orders that the employee be returned to his position it shall direct the payment of salary to the employee for such period of time as the board finds the adverse action was improperly in effect."[4]

Swepston does not contend that the word "salary" as used in section 19584 includes compensation for overtime nor can such a construction of the word be supported. Prior to 1943, there was no statutory provision for overtime compensation for state officers and employees. (See *Martin* v. *Henderson* (1953) 40 Cal.2d 583, 589 [255 P.2d 416].) "Section 1033 of the Political Code (now Gov. Code, § 18000) provided: 'The salaries fixed by law for all state officers, elective or appointive, shall be compensation in full for all services rendered in any official capacity or employment whatsoever, during their terms of office, and no such officer shall receive for his own use any fee or perquisite for the performance of any official duty.' The same limitation was applied to civil service employees by the State Personnel Board (State Personnel Board Rule 12, § 2[c], . . . ) acting under its power to 'establish and adjust salary ranges.' [Citation.]" (*Martin* v. *Henderson, supra,* 40 Cal.2d at p. 589.) "Implementing this limitation, the board also specifically prohibited additional payment to any employee for overtime." (*Ibid.*)

In 1943, section 73 was added to the State Civil Service Act (Stats. 1937, ch. 753) providing for a "normal work week" to be established by the State Personnel Board for each civil service class and requiring overtime compensation or time off in lieu of overtime. (Stats. 1943, ch. 1041, § 1, pp. 2976-2977; now Gov. Code, §§ 19843, 19844, 19851; see *Jarvis* v. *Henderson* (1953) 40 Cal.2d 600, 604 [255 P.2d 426].)

Thus, historically the term "salary" has been used in the State Civil Service Act to denominate compensation of a fixed sum for all services rendered. (§ 18000.) With respect to the compensation of state employees for work performed in excess of the normal work week, the Legislature used the phrase "overtime compensation." (See § 19844.) We presume that "salary" was intended to have the same meaning in the State Civil Service Act wherever used. (*People* v. *McCart* (1982) 32 Cal.3d 338, 344 [185 Cal.Rptr.

---

[3] Part 2 (§ 18500 et seq.), title 2, Government Code. All further references are to the Government Code unless otherwise provided.

[4] Section 19584, as amended by Statutes 1981, chapter 527, section 12, page 1892.

284, 649 P.2d 926].) Hence, as used in section 19584, salary is exclusive of "overtime compensation."

■ Swepston contends, however, that amendments made to section 19584 by the Legislature in 1985 are of relevance to this appeal and in them we may find an intent to "make whole" those employees whose adverse action is revoked or modified.

After the Board revoked the action dismissing Swepston, but prior to the time the parties reached an agreement on the amount of compensation due him, section 19584 was amended to read, in part, as follows: "Whenever the board revokes or modifies an adverse action and orders that the employee be returned to his or her position, it shall direct the payment of salary and all interest accrued thereto, and the reinstatement of all benefits that otherwise would have normally accrued. Benefits shall include, but shall not be limited to, retirement, medical, dental, and seniority benefits pursuant to memoranda of understanding for that classification of employee to the employee for such period of time as the board finds the adverse action was improperly in effect."[5]

Swepston's threshold task is to convince this court that the amendatory language applied retroactively to fix his rights upon reinstatement.

■ " 'A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.' " (*Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 391 [182 P.2d 159].) ■ In this case Swepston was restored to his position on November 5, 1985, and therefore the application of the amendments subsequently made to section 19584 to determine his rights to compensation for his wrongful discharge would clearly be retrospective.

■ The central inquiry on retrospective application of a statute is whether the Legislature intended the amendment to operate retroactively. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371].) In the absence of indicia that the changes were intended to apply retroactively, there is a presumption that the changes apply prospectively only. (*County of Sacramento v. Loeb* (1984) 160 Cal.App.3d 446, 459 [206 Cal.Rptr. 626].) Moreover, legislative intent in favor of the retroactive operation of a statute is not to be implied from the mere fact that the statute is remedial and subject to the rule of liberal construction. (*Aetna Cas. & Surety Co. v. Ind. Acc. Com., supra,* 30 Cal.2d at p. 395.)

---

[5] Section 19584 as amended by Statutes 1985, chapter 1195, section 6. The amended section was effective January 1, 1986. (See Cal. Const., art. IV, § 8, subd. (c)(1).)

■ Our search reveals nothing which suggests a legislative intent to make the amendments retroactive. The statute itself is silent on its application to cases in which reinstatement had already been ordered, and nothing can be gleaned from the legislative history of the amendment. We therefore conclude in accordance with the long-standing presumption, that the amendments to section 19584 operated prospectively only, and that therefore Swepston cannot rely on the amendatory language to support his assertion to entitlement to overtime compensation.

Moreover, even if Swepston could rely on the amendments made to section 19584, by the ordinary rules of statutory construction, nothing in the amended language of section 19584 authorizes the Board to compensate a worker for the overtime he would have worked during the period of his involuntary discharge.

■ The courts are bound to give effect to statutes according to the usual, ordinary import of their language. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) The aim of the exercise is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The courts are not free to rewrite a statute to conform to an inferred intention that does not appear from its language. (*Mills* v. *Superior Court* (1986) 42 Cal.3d 951, 957 [232 Cal.Rptr. 141, 728 P.2d 211].)

■ Amended section 19584 provides for the payment of salary, and "the reinstatement of all benefits that otherwise would have normally accrued." "Benefits" are described as including "retirement, medical, dental, and seniority benefits pursuant to memoranda of understanding."

■ ■ First of all, under the canon of statutory construction known as *ejusdem generis,*[6] the reference to "benefits" in section 19584 must be construed as applicable only to things of the same general nature or class as those enumerated. (*Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters, supra,* 25 Cal.3d at p. 331.) We are of the opinion that overtime compensation a discharged employee would have earned is not of a like character with those things described as "benefits."

---

[6] "'[T]he doctrine of *ejusdem generis* (also known as Lord Tenterden's rule) . . . states that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage.' [Citations.]" (*Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 331, fn. 10 [158 Cal.Rptr. 370, 599 P.2d 676].)

Secondly, "benefits" in section 19584 are limited to benefits owed the employee pursuant to the applicable memorandum of understanding. Swepston did not undertake to show what rights he has to earn compensation for overtime under the memorandum of understanding or that the right, if addressed by the memorandum of understanding, could be characterized as a "benefit" under the agreement.[7]

Moreover, the operative verb in section 19584 with respect to "benefits" is "reinstate." "Reinstate" means "[t]o restore to a previous condition or position." (American Heritage Dict. (2d college ed. 1982) p. 1042.) One would speak more appropriately of overtime compensation as being "paid." However, as we have earlier discussed only salary is required to be paid pursuant to section 19584, and "salary" does not include overtime compensation.

We conclude therefore that overtime compensation is embraced neither within the term "salary" nor the term "benefits" as used in section 19584. In light of this conclusion we need not consider Swepston's further request that we find the Board had the burden of proof with respect to the amount of overtime compensation owed him.

Therefore, the trial court properly determined Swepston is not entitled to be compensated for the overtime he would have worked during the period of his involuntary discharge.

The judgment is affirmed.

Puglia, P. J., and Sims, J., concurred.

---

[7] The only evidence on the contract provisions was given by the employee relations officer of Swepston's employer. She testified the contract has a provision for volunteer overtime by seniority. She did not testify with more specificity concerning the provision, and the contract itself was not introduced.