TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | No. 93-412 |
| of | : | |
|  | : | JULY  29, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
|  | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
|  | : | |

---

THE HONORABLE LOUISE H. RENNE ("relator"), City Attorney for the City and County of San Francisco ("City"), has requested leave to sue KAY K. YU ("defendant") in quo warranto upon the following:

ISSUES OF FACT OR LAW

May an individual simultaneously hold the positions of California deputy attorney general and City public utilities commissioner under the terms of the City's charter?

DISPOSITION

Leave to sue is granted to determine whether an individual may simultaneously hold the positions of California deputy attorney general and City public utilities commissioner under the terms of the City's charter.

MATERIAL FACTS

At all times pertinent herein defendant was and is a duly appointed, authorized, and acting deputy attorney general of the State of California and has and continues to receive a salary for services rendered in said position. Defendant is currently assigned to the tort and condemnation section of the civil division in the San Francisco office of the Attorney General. The attorneys in the tort and condemnation section defend state agencies with respect to personal injury and property damage claims and litigate condemnation cases; they do not engage in the regulation of any public utilities.

On January 26, 1993, defendant was duly appointed as a commissioner of the City's public utilities commission but has never accepted the compensation of $100 per month for services rendered in said position. The commission operates and controls the City's municipal railway, water department, Hetch Hetchy water project, and bureau of light, heat, and power. It has an annual budget of $500 million, 4,900 officers and employees, and assets valued in excess of $2 billion.

ANALYSIS

A.     The San Francisco Charter

Section 8.103 of the San Francisco Charter[1] provides:

"Any person holding a salaried office under the city and county, whether by election or by appointment, who shall, during his term of office, hold or retain any other salaried office under the government of the United States, or of this state, or who shall hold any other salaried office connected with the government of the city and county, or who shall become a member of the legislature, shall be deemed to have thereby vacated the office held by him under the city and county."

Each commission member is appointed by the mayor for a four-year term and is subject to recall and to suspension and removal in the same manner as the City's elective officers.  (§§ 1.103, 3.590.)

The central issues that ultimately must be resolved are (1) whether defendant's position on the City's commission is a "salaried office" and (2) whether her position as a deputy attorney general is a "salaried office" for purposes of section 8.103. If both so qualify, her position as a City commissioner is "deemed . . . vacated" under section 8.103.

With respect to the first issue, the charter itself describes each City commissioner as an "officer."  (§ 1.103 ["The officers of the city and county shall be the officers elected by vote of the people, members of the board of education, members of boards and commissions appointed by the mayor . . . ."].)  Such characterization is consistent with the normal considerations of what constitutes a public office.  (See 73 Ops.Cal.Atty.Gen. 357 (1990) [city port commissioner]; 73 Ops.Cal.Atty.Gen. 197 (1990) [school personnel commissioner]; 64 Ops.Cal.Atty.Gen. 288 (1981) [county planning commissioner].)

In *Neigel* v. *Superior Court* (1977) 72 Cal.App.3d 373, the court construed a city charter provision similar to section 8.103.  Section 225 of the San Bernardino City Charter provided: "No person holding a salaried office of this City . . . shall hold any other office . . . ."  (Id., at p. 375, fn. 1.)  Concerning the term "office," the court stated:

". . . Although the charter does not define the word `office,' it does provide for various elective and appointive officers such as mayor, councilmen, city attorney, city assessor, treasurer, city engineer, superintendent of streets, chief of police, chief engineer of the fire department, and members of various boards and commissions established by the charter.  Those persons occupy policy-making positions; they are elected or appointed for either a prescribed term or serve at the pleasure of the appointing authority; and their duties and powers are prescribed by the charter.  Section 225 was manifestly intended to apply to such persons."  (Id., at p. 378.)

Although defendant's position as a commissioner is an "office" under the City's charter, is it a "salaried" office, since the compensation is limited to $100 each month?  The term "salary" may be defined in various ways.  (See *Swepston* v. *State Personnel Bd.* (1987) 195 Cal.App.3d 92, 95-96 ["salary" does not include compensation for overtime for purposes of the State Civil Service Act].)  While the charter refers to the $100 as "compensation" rather than "salary" (§ 3.540), we note that the sum of $100 per month has been referred to as a "salary" in differing

_____

[1]Prior to footnote 3, references to the San Francisco Charter are by section number only.

2.                                                                            93-412

contexts (see *Allen* v. *Board of Administration* (1983) 34 Cal.3d 114, 117 [state legislator's compensation prior to 1949]; *Hallinan* v. *Mellon* (1963) 218 Cal.App.2d 342, 344 [San Francisco police commissioner's compensation].)

Even if $100 per month constitutes a salary for purposes of section 8.103, the question remains whether defendant may change the character of the office to a nonsalaried office (see 68 Ops.Cal.Atty.Gen. 7, 10-11 (1985); 66 Ops.Cal.Atty.Gen. 176, 180-181 (1983)) by refusing to accept any compensation for services rendered as a commissioner (see *City of Ukiah* v. *Fones* (1966) 64 Cal.2d 104, 109-110; *O'Sullivan* v. *City & County of S.F.* (1956) 145 Cal.App.2d 415, 417-418; 72 Ops.Cal.Atty.Gen. 258, 262 (1989); 60 Ops.Cal.Atty.Gen. 23, 24 (1945); 40 Ops.Cal.Atty.Gen. 54, 55 (1962)).

Not only does section 8.103 require defendant to hold a "salaried office" with the City, she must hold a "salaried office" with the state. Undoubtedly she receives a salary as a deputy attorney general, but is such a position an "office"? Whether a particular governmental position is an "office" as distinguished from an "employment" is often difficult to determine. For example, in 57 Ops.Cal.Atty.Gen. 303 (1974), we set forth a compendium of cases and prior opinions, concluding that "the case law on the subject of what is a public office is vast, and the decisions often seem to go in opposite directions." (Id., at p. 305.) A decade later in 68 Ops.Cal.Atty.Gen. 337 (1985), we provided a lengthy analysis of the requisite elements of an office as opposed to an employment. In doing so we analyzed the leading cases in the area such as *People ex rel. Chapman* v. *Rapsey* (1940) 16 Cal.2d 636; *Coulter* v. *Pool* (1921) 187 Cal. 181; *Patton* v. *Board of Health* (1899) 127 Cal. 388; *Main* v. *Claremont Unified School District* (1958) 161 Cal.App.2d 189; *Schaefer* v. *Superior Court* (1952) 113 Cal.App.2d 428; and *Lymel* v. *Johnson* (1930) 105 Cal.App. 694. We determined that at a minimum, an "office" must be created by or authorized by some law and the incumbent must be clothed with some portion of the sovereign powers of the state. (68 Ops.Cal.Atty.Gen., *supra*, 342.)

In *Neigel* v. *Superior Court, supra,* 72 Cal.2d 373, the Court of Appeal concluded that a city police officer did not hold a "salaried office" for purposes of the city's charter even though he exercised sovereign powers and held an "office" for other purposes. The court stated:

"The city relies on cases holding that a policeman falls within the category of a public officer because he is entrusted with the duty and power to exercise a part of the sovereign governmental powers of the entity for which he is acting. (*Logen* v. *Shields,* 190 Cal. 661, 664-665; *Estrada* v. *Indemnity Ins. Co.,* 158 Cal.App.2d 129, 134-135; *Brown* v. *Boyd,* 33 Cal.App.2d 416, 422; *Noble* v. *City of Palo Alto,* 89 Cal.App. 47, 52; see 3 McQuillin Municipal Corporations (3d ed. rev.) § 12.30, p. 175.) However, the fact that policemen have been held to be public officers for certain purposes does not lead inevitably to the conclusion that they are `officers' for all purposes. (*Davis* v. *Kenrick,* 52 Cal.2d 517, 519.) The meaning of the words `officer' or `official' varies with the conditions and circumstances in which they are used. (*Davis* v. *Kenrick, supra,* 52 Cal.2d 517, 519; *Pockman* v. *Leonard*, 39 Cal.2d 676, 683, app. dism., 345 U.S. 962; *Martin* v. *Riley,* 20 Cal.2d 28, 34; *Estrada* v. *Indemnity Ins. Co., supra,* 158 Cal.App.2d 129, 134.)" (Id., at p. 378.)

Looking at defendant's duties as a deputy attorney general, we observe first that the Attorney General is "the chief law officer of the State." (Cal. Const., art. V, § 13; see Gov. Code, §§ 12500-12612; *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 14-15; *People ex rel. Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912, fn. 1; *People ex rel. Lynch* v. *San Diego Unified School District* (1971) 19 Cal.App.3d 252, 258.) As stated in *People* v. *New Penn Mines, Inc.* (1963) 212 Cal.App.2d 667, 671:

"As chief law officer of the state, the Attorney General has broad common law powers. In the absence of legislative restriction he has the power to file any civil action which he deems necessary for the enforcement of the laws of the state and the protection of public rights and interests. [Citations.]"

A deputy attorney general is normally authorized to perform any duties the Attorney General may perform personally. (*People* v. *Birch Securities Co.* (1948) 86 Cal.App.2d 703, 707; see Gov. Code, §§ 7, 1194, 18572; *People* v. *Hulbert* (1977) 75 Cal.App.3d 404, 408-411; *People ex rel. State Lands Commission* v. *Superior Court* (1974) 36 Cal.App.3d 727, 741; *People* v. *Woods* (1970) 7 Cal.App.3d 382, 387; *Wilber* v. *Office of City Clerk* (1956) 143 Cal.App.2d 636, 643-644; *People* v. *Hagan* (1954) 128 Cal.App.2d 491, 493-494; *People* v. *Purcell* 22 Cal.App.2d 126, 131; *People* v. *Horiuchi* (1931) 114 Cal.App. 415, 432; 70 Ops.Cal.Atty.Gen. 250, 253, fn. 6 (1987); 68 Ops.Cal.Atty.Gen., *supra*, 10; 67 Ops.Cal.Atty.Gen. 72, 74 (1984); 63 Ops.Cal.Atty.Gen. 710, 712-716 (1980); 62 Ops.Cal.Atty.Gen. 479, 482, 486, 491 (1979); 56 Ops.Cal.Atty.Gen. 399, 401-402 (1973); 52 Ops.Cal.Atty.Gen. 75, 77 (1969); 50 Ops.Cal.Atty.Gen. 120, 121 (1967); 34 Ops.Cal.Atty. Gen. 24, 26 (1959); 31 Ops.Cal.Atty.Gen. 121, 125-126 (1958); 24 Ops.Cal.Atty.Gen. 56, 59 (1955).)

For some purposes a deputy attorney general may be considered an "officer" (see, e.g., Gov. Code, §§ 1001, 12502; *California State University, Hayward* v. *National Collegiate Athletic Assn.* (1975) 47 Cal.App.3d 533, 545), while not for others (see, e.g., Cal. Const., art. V, § 14, subd. (f)). A deputy attorney general is not considered to hold an "office" for purposes of the incompatible offices common law doctrine, but instead is governed by an incompatibility statement issued by the Department of Justice. (63 Ops.Cal.Atty.Gen., *supra*, 719, fn. 6.)[2]

We cannot agree with the city attorney that an "inherent potential for conflicts" between the positions of commissioner and deputy attorney general provides a basis for disqualifying defendant from serving as commissioner. It is true, as the city attorney points out in the verified complaint attached to the application for leave to sue in quo warranto, that the Attorney General represents the State Water Resources Board, the Department of Fish and Game, and the Regional Water Quality Control Board. It is also true that conflicts could sometimes arise as a result of the jurisdiction and the interrelationship of the City's public utilities commission and state agencies represented by the Attorney General. Such potential or occasional conflicts do not, however, require resignation from a position. It is sufficient that the person holding the position abstains from discussing or voting on matters relating to the controversy from which the conflict arises. (73 Ops.Cal.Atty.Gen. 191 (1990).)

The issue was specifically addressed by this office when defendant was appointed commissioner by the mayor. The chief assistant attorney general for the civil division issued a memorandum to defendant which, in part, stated:

"Because of (1) the size of this office, (2) the fact that your current duties in the Tort Section are unrelated to your position on the Commission, and (3) your

---

[2]In our 1980 opinion, we concluded that a deputy district attorney held an office for purposes of the incompatible offices common law doctrine. (63 Ops.Cal.Atty.Gen., *supra*, 711-718.) In response to our opinion, the Legislature enacted Government Code section 1128 (Stats. 1981, ch. 391, § 2), allowing deputy district attorneys and other local government attorneys to be elected or appointed to a "governmental board, commission, committee, or other body" without violating the common law prohibition against holding incompatible offices.

explicit assurance that you will abstain from participation in any matters involving a state agency represented by the Attorney General, it appears that impermissible conflict can be effectively avoided by the rigorous system of screening within this office."

Therefore, only the proper construction of the term "salaried office" as used in section 8.103 is of concern here. No examination is necessary to determine whether an actual conflict of interest might arise for a person holding the two positions in question. Abstention is not an alternative if the two positions are salaried offices. (See 63 Ops.Cal.Atty.Gen., *supra*, 715-716.) As stated in *Neigel* v. *Superior Court, supra,* 72 Cal.App.3d at 379:

". . . By prescribing that acceptance of any other defined governmental office will result in automatic vacation of a city office, the section avoids the problem of determining incompatibility on a case by case method."

We conclude that whether defendant holds a salaried office as a City commissioner and a salaried office as a deputy attorney general under the terms of the City's charter presents substantial questions of fact and law.

B.     Quo Warranto Proceedings

Code of Civil Procedure section 803[3] provides:

"An action may be brought by the attorney general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state. And the attorney general must bring the action whenever he has reason to believe that any such office or franchise has been usurped, intruded into, or unlawfully held or exercised by any person, or when he is directed to do so by the governor."

In determining whether a quo warranto proceeding should be instituted under the provisions of section 803 against defendant, we first note that the statute refers to "a complaint of a private party." The relator in this proposed action is a public officer, acting on behalf of the City's board of supervisors.[4] Does the relator qualify as a "private party"?

This office has never interpreted the language of section 803 in such a narrow manner as to exclude public officers and agencies from qualifying as relators. Our current quo warranto pamphlet states: "Application to the Attorney General for leave to sue in quo warranto may be made by a private person or local agency pursuant to the rules and regulations issued by the Attorney General." (Cal. Dept. Justice, Quo Warranto (1990) p. 9.) Our regulations refer to "[a]ny person desiring `leave to sue' in the name of the people . . . ." (Cal. Code Regs, tit. 11, § 1.)

---

[3]All references hereafter to the Code of Civil Procedure are by section number only.

[4]The board of supervisors adopted a motion urging the city attorney to consider bringing suit in quo warranto to test defendant's right to hold the office of City commissioner.

In *San Ysidro Irr. Dist.* v. *Superior Court* (1961) 56 Cal.2d 708, 715-716, the Supreme Court recognized the right of a city to seek permission from the Attorney General to bring a quo warranto action pursuant to the terms of section 803. Similar recognition was given by the Court of Appeal in *City of Campbell* v. *Mosk* (1961) 197 Cal.App.2d 640, 644-645. In 35 Ops.Cal.Atty.Gen. 214, 216 (1960), we granted the request of the City of Downey, acting through its attorneys, to bring a quo warranto action under the terms of section 803. We believe that a public official or agency may qualify as a relator under the provisions of section 803.

However, the Legislature's grant of authority contained in section 811 must also be considered. Section 811 states:

"The action provided for in this chapter may be maintained by the board of supervisors of any county or city and county of the legislative body of any municipal corporation, respectively, in the name of such county, city and county or municipal corporation against any person who usurps, intrudes into or unlawfully holds or exercises any franchise, or portion thereof, within the respective territorial limits of such county, city and county or municipal corporation and which is of a kind that is within the jurisdiction of such board or body to grant or withhold."

May the relator in this proposed action institute a quo warranto proceeding pursuant to section 811 without the approval of the Attorney General required by section 803? Is section 803 for private parties, and section 811 for public agencies?

Looking at the language of the two statutes, we find that section 803 refers to "any person who usurps, intrudes into, or unlawfully holds or exercises any public office," while section 811 omits this reference to public offices. In *San Ysidro Irr. Dist.* v. *Superior Court, supra,* 56 Cal.2d at 716, the Supreme Court commented:

". . . Section    811 of the Code of Civil Procedure, enacted in 1937 (Stats. 1937, p. 1617), grants to the legislative body of any municipal corporation the right to maintain quo warranto without the interposition of the Attorney General in the cases therein specified. . . . Comment is made on the purport of this section in 11 Southern California Law Review, page 51: `While Section 811 refers only to a "person" usurping such a franchise, this also includes a corporation under the provisions of Section 17 of the Code of Civil Procedure.

"`Evidently either the Attorney General of the State under Section 803, or the appropriate body mentioned in Section 811, now may maintain any action coming within the provisions of the latter section (that is, usurpation of a franchise as distinguished from the usurpation of an office). The provisions of Section 811 apparently are desirable for two reasons: (1) They permit such actions to be maintained by local bodies, which usually have a very direct and immediate interest in preventing the usurpation of such franchise; (2) The Attorney General may be relieved of the necessity of maintaining such an action if the local body proceeds to do so.'

"See also *City of Oakland* v. *Hogan* (1940) 41 Cal.App.2d 333, where it was said at pages 344-345: `Section 811 of the Code of Civil Procedure gives the right to a board of supervisors or the legislative body of a municipal corporation, in the name of the county or in the name of the municipality, to bring an action in quo warranto for unlawful holding etc. [of a wharf operated by certain individuals] within

the territorial limits of the county [or] municipal corporation . . . without the presence of the attorney-general appearing "in the name of the people of this state."'"

The law review article mentioned in the *San Ysidro* case specifically addressed the question whether the section 811 grant of authority included challenges to public officers as well as to the exercise of franchises:

> "This section evidently is limited to a situation where any person `usurps, intrudes into or unlawfully holds or exercises any franchise, or portion thereof' (a) within the territorial limits of the particular county, city and county or municipal corporation in question; and (b) which is of a kind that is within the jurisdiction of the plaintiff to grant or withhold -- and consequently does not include the usurpation of an office, despite the general reference in the section to the `action provided for in this chapter.'  It may be contended that `franchise' includes an office, and that therefore any office within the appointive power of any of the bodies mentioned in Section 811 comes within the provisions of said section.  However, both the title of Chapter V of the Code of Civil Procedure and section 803 refer to both an office and a franchise, clearly indicating that one does not include the other insofar as those terms are used in this chapter."  (Comment, *The Work of the 1937 California Legislature* (1937) 11 So.Cal.L.Rev. 1, 50.)

We have reviewed the legislative history of section 811 (Stats. 1937, ch. 579, § 1) and find that during the legislative process, the reference to public offices contained in Assembly Bill No. 2596 as originally introduced was stricken prior to the final vote on the measure.

Hence, we believe that the Legislature's grant of authority in section 811 is limited to challenges to the exercise of a franchise.  (See *Olson* v. *County of Sacramento* (1969) 274 Cal.App.2d 316, 326.)  Quo warranto challenges to public officers must be instituted under the terms of section 803 and have the approval of the Attorney General.[5]

It is well established that a quo warranto proceeding under section 803 is the appropriate remedy to test the right of a person to hold public office.  (*Visnich* v. *Sacramento County Bd. of Education* (1974) 37 Cal.App. 3d 684, 690; *Hallinan* v. *Mellon, supra,* 218 Cal.App.2d at 347-348; *Klose* v. *Superior Court* (1950) 96 Cal.App.2d 913, 917-919.)  This is particularly true when the question is whether a vacancy has occurred in a public office, and neither the officeholder nor the appointing power considers the office to be vacant.  (See *Klose* v. *Superior Court, supra,* 96 Cal.App.2d at 917-919.)  Here, both the officeholder (defendant) and the appointing power (the City's mayor) dispute that the office of City commissioner has become vacant under the terms of the charter.[6]

The authority to remove someone from office presents a different question.  (See 64 Ops.Cal.Atty.Gen., *supra,* 46, fn. 4.)  Normally the controlling law (here the City's charter) specifies

---

[5]A passing reference in *Housing Authority* v. *City Council* (1962) 208 Cal.App.2d 599, 603, suggests that a section 811 action may try title to office.  The court's reference is at most dicta and inconsistent with the statutory language as well as its legislative history.

[6]If an appointing power determines that an office has become vacant and appoints a successor, the former officeholder would be entitled to seek a quo warranto action to determine his or her right to the office.  (*Klose* v. *Superior Court, supra,* 96 Cal.App.2d at 917-918; 73 Ops.Cal.Atty.Gen., *supra,* 201; see also 64 Ops.Cal.Atty.Gen. 42, 43-46 (1981).)

the grounds for removal such as misconduct in office. The relator herein does not challenge any act of defendant; only the meaning of the term "salaried office" for purposes of determining whether the office of City commissioner is "deemed . . . vacated" under the terms of the charter is presented in this quo warranto application.

   C.  Public Interest

   It is well settled that the mere existence of a justiciable issue does not require the Attorney General to grant leave to sue in quo warranto. (*City of Campbell* v. *Mosk, supra,* 197 Cal.App.2d at 650; 74 Ops.Cal.Atty.Gen. 31, 32 (1991).) Consideration must also be given concerning whether maintaining an action in quo warranto in the circumstances presented would be consistent with the public interest.

   Defendant's interests in this matter are apparent. In *Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 408, 418, the Court of Appeal stated:

> "We consider disqualification from public office a significant civil disability. In California, the right to hold public office has long been recognized as a valuable right of citizenship. In 1869, in *People* v. *Washington,* 36 Cal. 658, 662, our Supreme Court declared that `[t]he elective franchise and the right to hold public offices constitute the principle political rights of citizens of the several States.' In *Carter* v. *Com. on Qualifications etc.,* 14 Cal.2d 179, 182, the court pointed out: `[T]he right to hold office, either by election or appointment, is one of the valuable rights of citizenship . . . *The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office. . . .'* (Italics added.) More recently, the high court, citing *Carter,* has termed the right to hold public office a `fundamental right.' (*Zeilenga* v. *Nelson* 4 Cal.3d 716, 720; *Fort* v. *Civil Service Commission,* 61 Cal.2d 331, 335.) Thus, any ambiguity in a constitutional provision calling for forfeiture of an existing office and disqualification from holding public office should be resolved in favor of continued eligibility. . . ."

   It is evident that the law is at least ambiguous as to whether a City public utilities commissioner and a California deputy attorney general are "salaried officers"; therefore, in the absence of a clear disqualification, defendant should be entitled to exercise her constitutional right to hold public office as commissioner while employed as a deputy attorney general. Nevertheless, the City has both the right and the duty to prevent conflicts of interests from being held by its officers and to expect that those who serve it have undivided loyalties. (See *Neigel* v. *Superior Court, supra* 72 Cal.App.3d at 379; 63 Ops.Cal.Atty.Gen., *supra,* 716-718.) Inasmuch as the city attorney takes the position that a judicial determination is needed to resolve the question of whether defendant's appointment violated the City's charter, we believe that the city attorney should be permitted to obtain that determination.

   As we recently stated in 74 Ops.Cal.Atty.Gen. 26, 29 (1991): "It is not the province of the Attorney General to determine which party should or is likely to prevail in a quo warranto proceeding. (72 Ops.Cal.Atty.Gen. 15, 19 (1989)." The proper construction of the City's charter is for a court to decide.[7] Substantial questions of fact and law are present, and a quo warranto

---

[7]In so doing, the court may follow the normal rules of construction applicable to statutes and the Constitution (*Diamond International Corp.* v. *Boas* (1979) 92 Cal.App.3d 1015, 1030-1031), including giving great weight to the construction of the charter given by the city attorney (*DeYoung*

proceeding "gives a plain, speedy and adequate remedy." (*Klose* v. *Superior Court, supra,* 96 Cal.App.2d at 925.)

Finally, we point out that during the pendency of the quo warranto proceeding, defendant's actions as a commissioner will be considered valid and binding upon the City. Under the "de facto doctrine," absent a definitive determination that the two positions are salaried offices for purposes of the City's charter, defendant's acts on behalf of the commission will continue to be valid. As stated by the Supreme Court in *In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 42:

"The de facto doctrine in sustaining official acts is well established. Present a de jure office, `Persons claiming to be public officers while in possession of an office, ostensibly exercising their functions lawfully and with the acquiescence of the public, are *de facto officers*. . . . The lawful acts of an officer *de facto*, so far as the rights of third persons are concerned, are, if done within the scope and by the apparent authority of office, as valid and binding as if he were the officer legally elected and qualified for the office and in full possession of it.' (*Town of Susanville* v. *Long* (1904) 144 Cal. 362, 365; see also *Oakland Paving Co.* v. *Donovan* (1912) 19 Cal.App. 488, 494-496; *Clark* v. *City of Manhattan Beach* (1917) 175 Cal. 637, 639.)"

Leave to sue is granted to test whether defendant is deemed to have vacated her office as a commissioner of the City under the terms of section 8.103 of the San Francisco Charter.

\* \* \* \* \*

---

v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18).