Filed 7/14/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>STATE PERSONNEL BOARD,<br><br>  Defendant and Respondent;<br><br>ROBERT MARTIN et al,<br><br>  Real Parties in Interest and Appellants. | No. H038027<br>(Monterey County<br> Super. Ct. No. M110195) |

Appellants Robert Martin and Ronald Sphar were reinstated to their employment with appellant, California's Department of Corrections and Rehabilitation (CDCR), by respondent State Personnel Board (the Board) after they successfully challenged their dismissals. The Board awarded Martin and Sphar backpay and benefits under Government Code section 19584,[1] including merit salary adjustments and physical fitness incentive pay (PFIP), and offset that award with the amount of money they had earned from other employers, not including overtime pay, during the four-year period between

---

[1]     Subsequent statutory references are to the Government Code unless otherwise specified.

their dismissals and their reinstatements. The Board also ruled that Sphar should be compensated at salary range "K," which he had not yet qualified for at the time of his dismissal.

CDCR petitioned the superior court for a writ of mandate overturning the Board's decision to include merit salary adjustments and PFIP, and it claimed that the offset should have included overtime pay. The CDCR also challenged the Board's decision that Sphar would be compensated at salary range "K."[2] The superior court granted the petition in part by mandating that the offset include overtime pay. It denied the remainder of the petition. Martin and Sphar challenge the superior court's decision on the overtime issue. CDCR challenges the superior court's denial of its other challenges. We conclude that section 19584 authorized the inclusion of merit salary adjustments and PFIP in the Board's award and authorized Sphar to be compensated at salary range "K." In addition, we agree with the superior court that section 19584 required the inclusion of overtime pay in the offset. Accordingly, we affirm the judgment.

## I. Background

Martin began working for CDCR in 2000, and Sphar began working for CDCR in 2002. They were dismissed by CDCR in 2004. Sphar and Martin challenged their dismissals. In October 2008, an administrative law judge (ALJ) found that the dismissals had been unjustified and revoked them. The ALJ's decision provided that a hearing would be set if the parties were "unable to agree as to salary, benefits and interests [*sic*], if any, due [Martin and Sphar] under the provisions of Government Code section 19584."

---

[2] The CDCR challenged the inclusion of health insurance and out-of-pocket medical expenses in the award, but that issue was resolved below and is not raised on appeal.

In December 2008, the Board adopted the ALJ's decision. Martin and Sphar returned to work for CDCR in 2009.

In July 2010, an ALJ held hearings on the amount of salary, benefits, and interest due Sphar and Martin. Throughout the period between their dismissals and their reinstatements, the terms of Sphar's and Martin's employment were governed by a memorandum of understanding (MOU) between the State of California and the California Correctional Peace Officers Association (CCPOA). The MOU provided for PFIP and annual merit salary adjustments. Sphar testified that he received annual merit salary adjustments throughout his CDCR service, and the merit salary adjustments were not associated with any evaluation of his job performance. He also received PFIP throughout his service, and the only requirement to receive PFIP was that each year he have his doctor sign a document declaring that he was physically fit. Sphar worked overtime hours for his substitute employers during the period between his dismissal and his reinstatement. One of his substitute employers required him to have a physical every two years and to obtain a certification that he was physically fit for his employment. Martin testified that he usually worked one or two hours a week of overtime when he was employed by CDCR. He received PFIP and annual merit salary adjustments throughout his CDCR service. The only requirement to receive PFIP was that he get a physical each year. During the period between his dismissal and his reinstatement, Martin worked substantial amounts of overtime for his substitute employers.

The ALJ ruled: (1) Sphar and Martin were entitled to recover merit salary adjustments and PFIP throughout the period from their dismissals to their reinstatements; (2) the setoff against their recovery should not include overtime worked for their substitute employers; and (3) Sphar's salary recovery should reflect a pay range "K" as of March 2005, when Sphar would have qualified for it had he not been dismissed. In 2010, the Board adopted the ALJ's decision.

In 2011, CDCR filed a petition for a writ of mandate in the superior court challenging the Board's decision regarding merit salary adjustments, PFIP, the offset for overtime, and the application of salary range "K."[3] The court found that the merit salary adjustments, PFIP, and range "K" amounts were "sufficiently predictable" and therefore recoverable. The court found that section 19584 mandated that the offset include overtime. Thus, it granted the petition solely as to the offset for overtime. Sphar and Martin timely filed a notice of appeal, and CDCR filed a cross-appeal.

## II. Discussion

Our primary task in both the appeal and the cross-appeal is to construe section 19584. "Whenever the board revokes or modifies an adverse action and orders that the employee be returned to his or her position, it shall direct the payment of salary and all interest accrued thereto, and the reinstatement of all benefits that otherwise would have normally accrued. 'Salary' shall include salary, as defined in Section 18000, salary adjustments and shift differential, and other special salary compensations, if sufficiently predictable. Benefits shall include, but shall not be limited to, retirement, medical, dental, and seniority benefits pursuant to memoranda of understanding for that classification of employee to the employee for that period of time as the board finds the adverse action was improperly in effect. [¶] . . . [¶] From any such salary due there shall be deducted compensation that the employee earned, or might reasonably have earned,

---

[3] Although the petition named the Board as the respondent, the Board took no active role in the action. Real parties Sphar and Martin defended the Board's decision against the petition below.

4

during any period commencing more than six months after the initial date of the suspension."[4]  (§ 19584.)

"'Statutory construction is a question of law which requires the exercise of our independent judgment.' [Citation.]" (*Abernathy Valley, Inc. v. County of Solano* (2009) 173 Cal.App.4th 42, 46.)  "We apply well-settled principles of statutory construction. Our task is to discern the Legislature's intent.  The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.  On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.  In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)  "'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] . . . 'a construction making some words surplusage is to be avoided.' [Citation.]  'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.]  Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230.)

---

[4]  "If the board finds that the cause or causes for which the adverse action was imposed were insufficient or not sustained . . . , it may modify or revoke the adverse action and it may order the employee returned to his or her position with appropriate restoration of backpay and lost benefits . . . ." (§ 19583.)

"[W]e give great deference to the agency's interpretation of statutes affecting issues within its administrative sphere."  (*Camarena v. State Personnel Bd.* (1997) 54 Cal.App.4th 698, 701.)  However, we "do not necessarily defer to SPB's interpretations of the governing statutes.  [Citation.]  The judiciary takes ultimate responsibility for the construction of statutes, although according great weight and respect to the administrative construction such as is appropriate under the circumstances."  (*California Dept. of Corrections v. State Personnel Bd.* (2004) 121 Cal.App.4th 1601, 1611 (*CDC*).)

## A.  The Appeal

In their appeal, Sphar and Martin challenge the superior court's ruling overturning the Board's decision to exclude from the offset the overtime they were paid by their substitute employers.

Section 19584 provides:  "From any such *salary* due there shall be deducted *compensation* that the employee earned, or might reasonably have earned, during any period commencing more than six months after the initial date of the suspension."  (§ 19584, italics added.)  The trial court characterized the statutory requirement of an offset for "compensation" as "broad" and "very sweeping."  It acknowledged the inequity of precluding recovery of overtime that the employee would have worked for CDCR but requiring an offset for overtime worked for substitute employers.  However, it felt bound by the "broad" statutory language.

Section 19584 has been held not to authorize the Board to include overtime pay that the employee would have earned from the state in a backpay award as either salary or benefits.  (*Swepston v. State Personnel Bd.* (1987) 195 Cal.App.3d 92, 95-98.)  However, *Swepston* did not consider whether overtime should be included in the offset.  The deduction of "compensation" from the backpay award has been part of section 19584 since its enactment in 1945.  At that time, section 19584 authorized "payment of salary for the period of suspension" upon reinstatement and required a deduction from that

6

"salary" of "[a]ny compensation [the employee] earned . . . during the period of suspension." (Stats. 1945, ch. 123, p. 569.) That portion of section 19584 has changed little since then. It now requires the deduction of "compensation that the employee earned" from substitute employers. (§ 19584.)

The Legislature explicitly defined exactly what it meant by "salary," but it did not define what it meant by "compensation." "Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.) Here, the Legislature used "compensation," rather than salary. The common meaning of "compensation" is "payment." (Merriam-Webster Collegiate Dict. (10th ed. 1993) p. 234.) Hence, "compensation . . . earned" means *earned payment*. Overtime income is plainly an *earned payment*. Consequently, it falls within the statutorily mandated deduction.

Sphar and Martin maintain that we should reject the plain meaning of the statutory language because it is "absurd." We do not find it "absurd" that the Legislature chose to include overtime in the offset even though it did not include overtime in its definition of "salary." Of course the Legislature could have reasonably decided *not* to include overtime in the offset on the ground that that it would be unfair to do so since the employee could not recover the overtime that he or she might have earned from the state but for the dismissal. On the other hand, the Legislature could reasonably conclude that, while it would be too speculative to award overtime that an employee might have earned from the state but for the dismissal, it was fair to deduct overtime earnings that the employee actually realized from a substitute employer in order to avoid giving the reinstated employee a potential windfall. We cannot view this reasonable policy choice as absurd. (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1105 [plain language construction not absurd where it is consistent with a reasonable policy choice by the Legislature].)

7

Sphar and Martin assert that the Board's decision should be upheld because section 19582 grants broad authority to the Board to do whatever is "just and proper." Nothing in section 19582 permits the Board to exceed the statutory authority granted to it in section 19584. The portion of section 19582 that Sphar and Martin rely upon reads: "Hearings may be held by the board, or by any authorized representative, but the board shall render the decision that in its judgment is just and proper." (§ 19582, subd. (a).) The clear meaning of this provision is that even if the hearing is held before an authorized representative rather than the Board, it is the Board that makes the "just and proper" decision. This provision tells us nothing about the meaning of the word "compensation" in section 19584 or the Board's power to interpret statutes.

Sphar and Martin also suggest that we should defer to the Board's understanding of section 19584. While we accord the Board's interpretation weight and respect, the ultimate responsibility for interpreting the statute belongs to the court. (*CDC*, *supra*, 121 Cal.App.4th at p. 1611.) Section 19584's use of the word "compensation" unambiguously sweeps broadly and encompasses all earned payments. We cannot defer to an interpretation that is rebutted by the plain language of the statute.

The federal authorities that Sphar and Martin cite are not pertinent here. Our task is to construe specific language in a California statute. Sphar and Martin do not suggest that any of these cases involved an interpretation of statutory language like that in section 19584. The trial court did not err in overturning the Board's decision to exclude overtime from the offset.

### B. The Cross-Appeal

### 1. Merit Salary Adjustments

CDCR contends that merit salary adjustments were not properly included in the Board's award because section 19584 does not include merit salary adjustments within its definition of "salary adjustments" and because Martin and Sphar could not qualify for

merit salary adjustments during the period between their dismissals and their reinstatements since they were not working for CDCR.

Section 19584 explicitly includes "salary adjustments" in its definition of the "salary" that a reinstated employee is entitled to recover. Section 19584's definition of salary was added to the statute in 1994 by Senate Bill No. 846 (Sen. Bill 846). (Compare Stats. 1985, ch. 1195, § 6 to Stats. 1994, ch. 814, § 4.) CDCR argues that "salary adjustments" does not include *merit* salary adjustments because Sen. Bill 846 originally proposed to include an explicit reference to "merit salary adjustments" in the added salary definition, but the explicit reference to "merit salary adjustments" was taken out of the proposal in a final amendment just before Sen. Bill 846 was passed by the Legislature.

Because CDCR depends so heavily on the legislative history of Sen. Bill 846, we examine it closely. Sen. Bill 846 was sponsored by CCPOA and opposed by the Department of Personnel Administration (DPA). The original version of Sen. Bill 846, introduced in March 1993, proposed, among many other things, to add a sentence to section 19584 that read: "Back pay shall include, but not be limited, to, salary, as defined in Section 18000, overtime compensation, merit salary adjustments, salary adjustments and shift differential and other special differentials or compensations, if the back pay is sufficiently predictable." (Sen. Bill 846, as introduced on Mar. 4, 1993, p. 15, italics omitted.) Sen. Bill 846 was amended in May 1993 and June 1993, but there were no changes to this proposed new sentence. (Sen. Bill 846, as amended on May 10, 1993, p. 16; Sen. Bill 846, as amended on June 9, 1993, p. 15.) In April 1994, Sen. Bill 846 was amended to remove the words "overtime compensation" from the proposed new sentence in section 19584. (Sen. Bill 846, as amended on Apr. 28, 1994.) In August 1994, Sen. Bill 846 was amended one final time. This amendment replaced the proposed new sentence with the one that became the current definition of "salary" in section 19584. (Sen. Bill 846, as amended on Aug. 26, 1994, p. 17.)

9

The bill analysis of the May 1993 version described the relevant portion of the bill as follows: "This bill would add to the 'back salary' definition such compensation items as: a) overtime, b) merit salary adjustments, c) shift differentials and other special differentials or compensation if the back pay is sufficiently predictable. [¶] This bill also adds to the definition of 'benefits,' those benefits provided by collective bargaining agreements, state or department rules or practices." (Sen. Public Employment and Retirement Com., Rep. on Sen. Bill No. 846 (1993-1994 Reg. Sess.) "as to be amended" Apr. 19, 1993.) The bill analysis did not change when Sen. Bill 846 reached the Senate floor in May 1993.

After the April 1994 amendment, the bill was described as follows: "Defines 'back salary' to mean [such] compensation items as merit salary adjustments, shift differentials and other special differentials or compensation if the back pay is sufficiently predictable. The current version of this bill deletes overtime compensation as a part of 'back salary'." (Assem. Com. on Public Employees, Retirement, and Social Security, Rep. on Sen. Bill No. 846 (1993-1994 Reg. Sess.) as amended Apr. 28, 1994; see also Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 846 (1993-1994 Reg. Sess.) Aug. 12, 1994.) "Expanding the definition of benefits to include back pay for employees who win adverse action appeals would not result in significant new costs. This would merely codify current practice." (Assem. Ways & Means Com., Rep. on Sen. Bill No. 846 (1993-1994 Reg. Sess.) as amended Apr. 28, 1994.)

Until the final August 26, 1994 amendment, the relevant provisions of the bill continued to be described under the title "Reinstatement, 'make whole.'" The penultimate analysis stated: "Existing law (Sec. 19584) authorizes the payment of salary and accrued interest and the reinstatement of benefits for a time period determined by SPB [(State Personnel Board)]. It is within SPB's jurisdiction to make the employee 'whole' based on the facts of each case. [¶] This bill would add to the 'back salary' definition such compensation items as: [¶] a. merit salary adjustments, [¶] b. shift

10

differentials and other special differentials or compensation if the back pay is sufficiently predictable. [¶] This bill also adds to the definition of 'benefits,' those benefits provided by collective bargaining agreements, state or department rules or practices." (Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 846 (1993-1994 Reg. Sess.) Aug. 12, 1994, p. 5.)

The final bill analysis, after the final amendment of the bill, did not expressly mention the final amendment. The bill was described as follows: "Defines salary for purposes of the law concerning reinstatement of an employee [to] include salary adjustments and shift differential, and other special salary compensation, if sufficiently predictable." (Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 846 (1993-1994 Reg. Sess.) Aug. 29, 1994.)

We find nothing in this legislative history to indicate that the Legislature intended to exclude merit salary adjustments from the definition of salary in section 19584. Sen. Bill 846 originally explicitly referenced "merit salary adjustments" and later eliminated this explicit reference while retaining the general reference to "salary adjustments . . . if sufficiently predictable." The legislative history provides no clues as to the reason for this change in the bill. "California courts have frequently noted, however, the very limited guidance that can generally be drawn from the fact that the Legislature has not enacted a particular proposed amendment to an existing statutory scheme." (*Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 735, fn. 7.) "Unpassed bills, as evidences of legislative intent, have little value." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1396.) "A former version of a bill which differs significantly from the version which is enacted is of little value on the issue of legislative intent." (*Samantha C. v. State Dept. of Developmental Services* (2010) 185 Cal.App.4th 1462, 1489; see also *Conrad v. Medical Bd. of California* (1996) 48 Cal.App.4th 1038, 1050, fn. 6 [rejected provisions treated the same as unpassed bills].)

11

CDCR posits that the simple fact that a prior version of Sen. Bill 846 expressly included "merit salary adjustments" and the final version did not demonstrates that the Legislature wished to exclude "merit salary adjustments" from the statute's definition of salary. Not so. That is but one of the possible inferences that may be drawn from the legislative history, and it is not the most reasonable one. The enacted version of Sen. Bill 846 included "salary adjustments . . . if sufficiently predictable" within the statute's salary definition. On its face, "salary adjustments" includes, rather than excludes, merit salary adjustments. Had the Legislature actually intended to *exclude* merit salary adjustments, it could have explicitly done so rather than expressly including "salary adjustments" generally. We find that the legislative history of Sen. Bill 846 provides no support for CDCR's contention that the Legislature intended to exclude merit salary adjustments from the scope of the "salary adjustments" the Legislature explicitly and generally included in section 19584.

CDCR's reliance on California Code of Regulations, title 2, section 599.687 is misplaced. (Cal. Code Regs., tit. 2, § 599.687 (Regs.).)[5] This regulation concerns "[p]eriods of absence from State service" and provides that where such periods are the result of "a permanent separation," those periods "shall not be counted as qualifying service for merit salary adjustments and special in-grade salary adjustments." (Regs., § 599.687.) This regulation is plainly inapplicable here. If it applied, portions of section 19584 would be rendered nugatory. While the "absence" of Sphar and Martin from state service was *intended by CDCR to be permanent*, it was neither permanent nor lawful because it was wrongful, and they were properly reinstated. Section 19584 expressly entitles Sphar and Martin to recover "salary adjustments . . . if sufficiently predictable." If this regulation had the effect that CDCR claims, no person wrongfully dismissed from

---

[5] Subsequent references to "Regs." are to this title.

12

state service would be able to recover "salary adjustments" even if those salary adjustments were "sufficiently predictable." A regulation may not render a statute nugatory. (*Cooper v. Swoap* (1974) 11 Cal.3d 856, 864.)

CDCR claims that section 19832 and DPA rules prohibited the Board from awarding Sphar and Martin merit salary adjustments for the period between their dismissals and their reinstatements. Section 19832 provides: "(a) After completion of the first year in a position, each employee shall receive a merit salary adjustment equivalent to one of the intermediate steps during each year when he or she meets the standards of efficiency as the department by rule shall prescribe. [¶] (b) If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if the provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act." (§ 19832.)

CDCR asserts that the Board could not have found that Sphar and Martin met the "standards of efficiency" during this period because they were not working for CDCR and therefore their "efficiency" could not be evaluated. CDCR contends that without a finding that Sphar and Martin met the standards of efficiency, they were ineligible for merit salary adjustments. Sphar and Martin argue that section 19832's "standards of efficiency" requirement conflicted with the MOU and therefore the MOU was controlling.[6]

---

[6] The trial court found that the provisions of the MOU prevailed and entitled Sphar and Martin to merit salary adjustments.

13

The MOU provided that employees "shall receive annual Merit Salary Adjustments (MSA) in accordance with Government Code Section 19832 and applicable Department of Personnel Administration (DPA) rules." If that were all it said, the MOU clearly would not conflict with section 19832. However, it also provided: "Employees who are certified as successful job performers shall receive their Merit Salary Adjustment (MSA). Successful job performance shall be based on the latest performance evaluation on file as of the date of the pay increase. If no performance report is on file, the employee shall be deemed to have been performing successfully and shall receive his/her MSA."[7] Thus, under the MOU, it was not necessary for there to be a certification that the employee met "standards of efficiency" during the requisite period. If the latest evaluation showed successful job performance or there was no evaluation on file, the employee was entitled to receive a merit salary adjustment. Here, it was undisputed that the only evaluations on file showed successful job performance, as both Sphar and Martin had always received their annual merit salary adjustments. Consequently, under the MOU, Sphar and Martin were entitled to receive merit salary adjustments.

CDCR claims that allowing Sphar and Martin to recover merit salary adjustments conflicts with DPA rules. DPA rules require a performance evaluation of each employee at least once a year (Regs., § 599.798(c)) and require a certification that the employee has met "the standards of efficiency required for the position" for the employee to be entitled to a merit salary adjustment (Regs., § 599.683). However, as noted above, the MOU conflicted with these regulations, and section 19832 provided that the MOU controlled. Therefore, compliance with the DPA rules was not required.

---

[7]     A CDCR personnel employee testified at the hearing that merit salary adjustments are given to an employee if the employee's supervisor approves the merit salary adjustment or fails to either approve or deny the merit salary adjustment. A merit salary adjustment is not given only if the supervisor denies the merit salary adjustment.

CDCR's reliance on *State Board of Equalization v. Superior Court of Los Angeles County* (1942) 20 Cal.2d 467 is misplaced since, as CDCR admits, that case did not involve section 19584. Equally misplaced is CDCR's reliance on the Board's precedential decision in *In re R.M.* (1994) State Personnel Board Precedential Decision No. 94-23. *In re R.M.* did not involve the current version of section 19584, nor did the MOU in *In re R.M.* contain the provisions that are dispositive here. Since CDCR concedes that the language in the MOU is "critical," we can see no reason to discuss *In re R.M.*

"We apply the substantial evidence test in reviewing a decision of the board. [Citation.] We do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of the board's decision. Its findings come before us 'with a strong presumption as to their correctness and regularity.' [Citation.] We do not substitute our own judgment if the board's decision '"'is one which could have been made by reasonable people. . . .' [Citation.]"' [Citation.]" (*Camarena v. State Personnel Bd.*, *supra*, 54 Cal.App.4th at p. 701.)

The evidence before the Board established that Sphar and Martin had always received annual merit salary adjustments even though they had not received regular performance evaluations and that CDCR routinely awarded merit salary adjustments to each employee unless the employee's supervisor expressly denied the employee a merit salary adjustment. Since Sphar and Martin had always been given annual merit salary adjustments and had never been denied one, it was "sufficiently predictable" that they would have received annual merit salary adjustments if they had not been wrongfully

dismissed.[8] We reject CDCR's challenge to the Board's award of merit salary adjustments to Sphar and Martin.

## 2. Salary Range

CDCR challenges the Board's decision that Sphar was entitled to be compensated at salary range "K" as of March 2005, three months after his dismissal. In order to reach salary range "K" an employee must complete 24 monthly CDCR Form 403's. Sphar had completed 21 before his dismissal. The trial court rejected CDCR's challenge. It found that there was evidence that it was "sufficiently predictable" that Sphar would have completed the remaining three monthly CDCR Form 403's in the three months following his dismissal had he not been dismissed, so he was entitled to be at salary range "K." CDCR relies on the same arguments that it makes regarding the merit salary adjustments. As we have already rejected those arguments with respect to the merit salary adjustments, we reject them here. Since, but for his improper dismissal, it was sufficiently predictable that Sphar would have been at salary range "K" as of March 2005, the Board's decision must be upheld.

## 3. PFIP

CDCR challenges the inclusion of PFIP on the same grounds that it challenges the inclusion of merit salary adjustments. Sphar and Martin testified that they were doing hard physical labor for their substitute employers between their dismissals and their reinstatements. The Board reasonably could have concluded from this evidence that it was sufficiently predictable that they would have qualified for PFIP if they had not been wrongfully dismissed from their CDCR employment. The trial court upheld the Board's decision on this point, and we can find no basis for a contrary conclusion.

_____

[8] Indeed, CDCR asserts that it does not challenge the sufficiency of the evidence to support the Board's decision.

16

## III. Disposition

The judgment is affirmed.  The parties shall bear their own appellate costs.

_____
Mihara, J.

WE CONCUR:

_____
Elia, Acting P. J.

_____
Grover, J.

Trial Court: Monterey County Superior Court

Trial Judge: Honorable Thomas W. Wills

Attorney for Plaintiff and Appellant
Department of Corrections and
Rehabilitation:

Alfred Mondorf
Stephen A. Jennings
Department of Corrections and Rehabilitation
Office of Legal Affairs

Attorney for Real Parties in
Interest and Appellants:

Barry J. Bennett
Thomas M. Sharpe
Heather Noel Phillips
Katwyn T. DeLaRosa
Ann M. Bennett
Law Offices of Bennett & Sharpe, Inc.